**Donald L. BRANSON, Plaintiff,**

v.

**FAWCETT PUBLICATIONS, Inc., a corporation, Defendant.**

**Civ. No. 1161.**

United States District Court
E. D. Illinois.

Sept. 17, 1954.

---

John Alan Appleman, Urbana, Ill., for plaintiff.

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., for defendant.

PLATT, District Judge.

The plaintiff filed this action, June 18, 1953, for alleged invasion of his right of privacy in Illinois and elsewhere throughout the United States. Defendant has answered, replied to interrogatories and taken plaintiff's deposition. The parties have stipulated that the court shall determine whether the plaintiff has a cause of action on the facts as disclosed by the pleadings, the answers to the interrogatories, and the deposition with the attached exhibit of the picture on which the action is based. Therefore, the facts are undisputed.

Plaintiff is a taxi driver in Urbana, Illinois, and during the summer months is a racing driver. The defendant Fawcett Publications, Inc., a Delaware Corporation, publishes and distributes a magazine called "True Confessions." The issue which included the picture in question was shipped from Louisville, Kentucky, on May 19, 1952, and was distributed by newsstands throughout the country and in Champaign, Illinois, June 11, 1952.

The picture of which plaintiff complains was used to illustrate a fictional story, which made no reference to plaintiff but concerned an individual who was a racer. The picture is a colored reproduction by the rotogravure process of a high speed photograph of a racing accident in which the plaintiff was involved. The plaintiff and some of his friends recognized the picture. The race occurred at Cedar Rapids, Iowa, in May, 1950 and was witnessed by approximately 2,500 paying spectators. The photograph was carried by wire services and was circulated in newspapers throughout the world the day following the accident. The defendant purchased the photograph for $25 as an article of commerce from Wide World Photos, New York. The defendant had no information of the circumstances or the persons involved. The photograph was also used in magazines including the May, 1953 issue of "Popular Science" magazine as an advertisement for Graflex Cameras.

Plaintiff claims no physical damages or loss of income, but claims he was kidded about the picture and thereby suffered mental anguish.

The tortious violation of the right of privacy has been recognized by one case in Illinois   In Eick v. Perk Dog Food Co., 347 Ill.App. 293, 106 N.E.2d 742, Judge Schwartz after an able and exhaustive analysis of the law came to the conclusion the plaintiff could recover for the unauthorized use of plaintiff's photograph by the defendant in an advertisement.  347 Ill.App. at page 299, 106 N.E.2d at page 745, Judge Schwartz stated:

"Basically, recognition of the right to privacy means that the law will take cognizance of an injury, even though no right of property or contract may be involved and even though the damages resulting are exclusively those of mental anguish. A person may not make an unauthorized appropriation of the personality of another, especially of his name or likeness, without being liable to him for mental distress as well as the actual pecuniary damages which the appropriation causes. The right of privacy is, of course, limited in cases of express or implied consent and in areas of legitimate public interest.  But no such limitations are relevant in the instant case. Plaintiff was not a public figure, she did not consent to have the picture used, and there was no legitimate news interest in her likeness.  Also, the right of privacy is sometimes limited to commercial situations. However, we need not discuss this limitation, because the instant case involves unauthorized advertising use of plaintiff's picture and would be comprehended within the narrowest definition of the right of privacy."

■  Plaintiff's action is not alone based on the law of Illinois, but in each state where the magazine was distributed.[1]  The tort by 1948 had been recognized either through judge made law or statutory enactment in 18 states.  However two jurisdictions have rejected the action, and two have indicated an attitude to deny it.[2]  In spite of the fact plaintiff's suit is in Illinois, the plaintiff's cause of action will be viewed in the light of the law in such jurisdictions where it exists, in determining whether defendant is entitled to summary judgment.

The defendant Fawcett Publications maintains that Branson does not have a cause of action for three reasons:

First:  The picture is too blurred to be a reproduction of Branson, or for that matter, of anybody else;

Second: Because Branson, as a public person seeking public support, has permitted his picture to be published for commercial purposes, he lost his right of privacy; and

Third: The Illinois one year statute of limitations bars this action.

This court will examine these reasons in order.

■  The first problem presented is whether the tort can be based on the picture which is too blurred to be a reproduction of a likeness of Branson, or of anyone else.  In the Eick case the protection is said to extend to "an unauthorized appropriation of the personality of another, especially of his name or likeness * * *."  The right has been defined "as the right of an individual to be let alone, or to live a life of seclusion, or to be free from unwarranted publicity * * *."[3]  The violation of the

1. Sidis v. F-R Pub. Corporation, 2 Cir., 113 F.2d 806.  See Banks v. King Features Syndicate, D.C., 30 F.Supp. 352. Libel cases on this point include Hartmann v. Time, 3 Cir., 166 F.2d 127, 1 A.L.R.2d 370; O'Reilly v. Curtis Pub. Co., D.C., 31 F.Supp. 364, and Hartmann v. American News Co., D.C.Wis., 69 F.Supp. 736.

2. 15 University of Chicago Law Review, page 926.  According to the recent case of Hazlitt v. Fawcett Publications, D.C. 1953, 116 F.Supp. 538, twenty-five states now recognize the right either as part of their common law or by statute.

3. 77 C.J.S., Right of Privacy, § 1, page 396; Banks v. King Features Syndicate, D.C., 30 F.Supp. 352.

right to be let alone undoubtedly requires the use of the personality,[4] name or likeness of the individual. In this the action resembles the action for libel or slander.[5] In Latimer v. Chicago Daily News, Inc., 330 Ill.App. 295, 71 N.E.2d 553, the court affirmed the dismissal of a libel suit for the reason that the language in the article did not identify the plaintiffs.[6] The language there complained of libeled unidentified members of a group of twenty-three lawyers. The plaintiffs comprised nine members of this group. Mueller v. Radebaugh, 79 Kan. 306, 99 P. 612, arose over a published offer for reward for the arrest of a thief. Nothing in the reward offer indicated that the defendant, whose goods were stolen, suspected the plaintiff or anyone else. The court held that it was correct for the lower court to refuse to permit witnesses to testify that they understood that the offer referred to the plaintiff as the thief. In Newton v. Grubbs, 155 Ky. 479, 159 S.W. 994, 48 L.R.A.,N.S., 355, defendant, a doctor, told a story about a certain young lady, but not indicating who she was. But, because of outside rumors, plaintiff's name became identified as the lady to whom he referred. At the trial, defendant testified that the plaintiff was not the woman to whom his story related. The court affirmed the lower court's action in directing a verdict for defendant. In Brewer v. Hearst Pub. Co., 7 Cir., 185 F. 2d 846, 849, the court expressly stated: "The words complained of were not written of and concerning the plaintiff and therefore were not actionable."

This brings the discussion to an examination of the picture here involved. Plaintiff testified in the deposition that he was in the upper automobile, and the court accepts this as true. However, the automobile is pointed upward in the air and the picture shows primarily the bottom of the racer. The backdrop of the picture is not distinguishable. No likeness, face, image, form or silhouette of the plaintiff or of any person is shown. From all that appears from the picture itself, there is no one in the car. Moreover, no identifying marks or numbers on the car appear. It is just another speed automobile. Plaintiff does not even assert that the car he was driving was the same color as that which appears in the colored reproduction. Thus, this is a picture that could have been taken at many races. This brings the problem into clear focus.

■ Was the plaintiff's right of privacy invaded by a picture being published of the automobile which he was driving? Does the right of privacy extend to a reproduction of one's automobile? If one runs his automobile into a post, and a picture is taken and used by an insurance company in an advertisement, is it a violation of the right of privacy, although neither an occupant nor a license plate appear? The answer is clearly no. Such a picture in and of itself cannot be said to violate one's personal right of privacy.[7] When considered by itself, it in no way relates to or identifies any particular driver.[8] It is only through independent knowledge such as would result from being present at the collision that it can be determined who the driver was. It is doubtful that this picture would have been recognizable even to the plaintiff or his friends had he or they not seen the newspaper photographs which appeared shortly aft-

---

4. Warren and Brandeis, The Right of Privacy, 4 Harvard Law Review 193.

5. Restatement of the law of Torts, Vol. 4, Sec. 867, page 399. "In some aspects it is similar to the interest in reputation, which is the basis of an action for defamation, since both interests have relation to the opinions of third persons."

6. See Fowler v. Curtis Pub. Co., D.C., 78 F.Supp. 303.

7. It was conceded in Lawrence v. Ylla, 184 Misc. 807, 55 N.Y.S.2d 343, that the New York right of privacy statute does not cover the case of a dog or the photograph of a dog.

8. See Brewer v. Hearst Pub. Co., 7 Cir., 185 F.2d 846, at page 848, for an analogous situation involving a photograph of a person's hand, leg and foot in a libel action.

er the collision, or seen the actual collision from the photographer's vantage point. A similar situation was present in Levey v. Warner Bros. Pictures, D.C., 57 F.Supp. 40. There, the first wife of George M. Cohan sued under the New York Right of Privacy Statute,[9] claiming that her right of privacy was violated by defendant's production and exhibition of the movie "Yankee Doodle Dandy," a dramatic and fictional biographic presentation of the life of George M. Cohan. The movie did not disclose to the public that Mr. Cohan had been married to the plaintiff but gave the impression that he had only been married once (to the woman who was in fact his second wife). The movie placed Mary, his second wife, in certain situations which were similar to events which occurred while Mr. Cohan was married to the plaintiff. The court remarked that persons who knew the plaintiff personally may have been reminded that the plaintiff actually took part in the events, but nevertheless denied recovery.[10] In the instant case the photograph in itself does not identify the plaintiff to the public or any member thereof. It is only when the picture is considered together with the news photograph or actual presence at the scene of the accident that the plaintiff becomes identified with the picture. As in the libel and slander cases, the picture of itself is not of and concerning the plaintiff, and it therefore cannot be said to violate his right of privacy.

██ In view of the plaintiff's lack of an essential ingredient of his action, the second and third contentions of defendant may be summarily considered. No doubt one who is a public figure, whether he seeks the public eye or not, waives the right of privacy as to all newsworthy publications. How far the courts of the various states will extend the waiver doctrine is not certain.[11] Inasmuch as the publication in "True Confessions" might be classified as use for trade purposes, it would be actionable in some states. The Illinois Statute of Limitations on defamation [12] would not be applicable.[13] Statutes of limitations

9. New York Civil Rights Law, McKinney's Consol.Laws, c. 6, § 51.

10. A motion to dismiss was granted in Toscani v. Hersey, 271 App.Div. 445, 65 N.Y.S.2d 814, 815, a case involving the book and play "A Bell for Adano." Plaintiff contended that the story actually related to events and acts concerning him, and was a word portrayal of his life, even though fictitious names were used. The court held that such a word portrayal was not a "portrait or picture of a living person" within the meaning of the New York Statute, even though the words described acts and events that would have been recognizable as acts and events concerning a living person.

11. Cases suggesting a broad extension of waiver by public figures include Cohen v. Marx, 94 Cal.App.2d 704, 211 P.2d 320; Sidis v. F-R Pub. Corporation, 2 Cir., 113 F.2d 806; Corliss v. E. W. Walker Co., 1 Cir., 64 F. 280, 31 L.R.A. 283; Estill v. Hearst Publishing Co., 7 Cir., 186 F.2d 1017; O'Brien v. Pabst Sales Co., 5 Cir., 124 F.2d 167; and Paramount Pictures v. Leader Press, D.C. Okl., 24 F.Supp. 1004. However many cases indicate that waiver does not extend to the use of one's personality for fiction or commercial purposes. These cases include Hazlitt v. Fawcett Publications, D.C., 116 F.Supp. 538; Garner v. Triangle Publications, D.C., 97 F. Supp. 546; Redmond v. Columbia Pictures Corporation, 277 N.Y. 707, 14 N. E.2d 636; Binns v. Vitagraph Co., 210 N.Y. 51, 103 N.E. 1108, L.R.A.1915C, 839; Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133; Semler v. Ultem Publications, 170 Misc. 551, 9 N.Y.S.2d 319; Lahiri v. Daily Mirror, 162 Misc. 776, 295 N.Y.S. 382; Molony v. Boy Comics Publishers, 188 Misc. 450, 65 N.Y.S.2d 173; Sutton v. Hearst Corporation, 277 App.Div. 155, 98 N.Y.S. 2d 233; Leverton v. Curtis Pub. Co., 3 Cir., 192 F.2d 974; Donahue v. Warner Bros. Pictures, 10 Cir., 194 F.2d 6; Mau v. Rio Grande Oil, Inc., 9 Cir., 28 F. Supp. 845; Barber v. Time, Inc., 348 Mo. 1199, 159 S.W.2d 291; Continental Optical Co. v. Reed, 119 Ind.App. 643, 86 N.E.2d 306, 88 N.E.2d 55, 14 A.L.R. 2d 743; and Pallas v. Crowley, Milner & Co., 322 Mich. 411, 33 N.W.2d 911.

12. Chapter 83, Ill.Rev.Stat. Sec. 14.

13. Hazlitt v. Fawcett Publications, D.C., 116 F.Supp. 538; see Bassett v. Bassett, 20 Ill.App. 543, holding that where there is no specific statute of limitation, the general statute applies.

in the various states have not been examined. Therefore, this decision is not grounded upon the defendant's last two reasons for dismissal.

This court concludes that the summary judgment for the defendant must be granted. Order may be submitted.