[Civ. No. 22346.   Second Dist., Div. Three.   Feb. 26, 1958.]

JOSEPH W. FAIRFIELD, Plaintiff and Appellant, v. AMERICAN PHOTOCOPY EQUIPMENT COMPANY (a Corporation), Defendant and Appellant.

Ethelyn F. Black for Plaintiff and Appellant.

Alexander H. Schullman, David S. Smith and Abe Mutchnik for Defendant and Appellant.

SHINN, P. J.—This is the second appeal in an action for an injunction and for compensatory and punitive damages, occasioned by defendant's unauthorized use of plaintiff's name in advertising its product. Defendant had judgment of nonsuit upon the first trial. That judgment was reversed by this court. (*Fairfield* v. *American Photocopy etc. Co.*, 138 Cal. App.2d 82 [291 P.2d 194].) Retrial was to the court, which made findings and entered judgment for plaintiff in the sum of $3,100, consisting of $1,500 compensatory damages and $1,600 punitive damages. The court also granted a permanent injunction against the use of plaintiff's name in the conduct of defendant's business. Defendant made a motion for new trial, which was ordered granted unless plaintiff agreed to

remit the $1,600 punitive damages and ordered denied if plaintiff filed the remission. Plaintiff filed a remission of the judgment in that amount. He appeals from the order requiring him to remit the punitive damages; defendant appeals from the judgment for compensatory damages.

Plaintiff is an attorney at law. Defendant is an Illinois corporation doing business in California; it manufactures and sells a photocopy machine known as the "Apeco Systematic Auto-Stat." Plaintiff was the only witness. Defendant offered no evidence. From the testimony of plaintiff, which was spread out exceedingly thin over 100 pages of direct and cross-examination, we glean the following facts: Plaintiff is licensed to practice law in New York and California. He has lived in the latter state since 1946. He has a wife and two children. His wife is an attorney at law and her professional name is Ethelyn Black. They maintain offices in Beverly Hills. In the summer of 1953, plaintiff bought a photostat machine from defendant which he found unsatisfactory; after considerable correspondence he returned it a month later and received a refund of his money.

In July 1954, an attorney named Lieberman called plaintiff's attention to a circular issued by defendant advertising the machine. It listed "Joe W. Fairfield, Los Angeles" with a list of 17 others as among "thousands of leading law firms using the Apeco Auto-Stat." No one else was listed from Los Angeles and none from Beverly Hills. Plaintiff had not authorized the use of his name. Lieberman made it clear that he suspected that plaintiff had received money for the use of his name, which plaintiff denied. A man who said he was a lawyer called by phone to inquire about the machine. A female lawyer called him to inquire about the machine and when told of plaintiff's experience with it, expressed doubt that the company would have listed plaintiff's name unless he was a satisfied user. She talked for several minutes and plaintiff was "getting a bad time" explaining to her. Another attorney who read the circular called him. Plaintiff had "a bad time with him." An attorney named April, whom plaintiff knew quite well, asked him pointblank how much he would ask to endorse a "dog product." Other attorneys, Harvey Silvert, Bentley Ryan and Sidney Traxler, asked him about the machine and plaintiff stated "Well, they wanted to know where I am earning more money by endorsing products than I am from the practice of law . . . and whether I found it profitable or lucrative." Plaintiff claimed that this good

natured bantering wounded his feelings; "I felt humiliated, embarrassed, chagrined. I was worried, sick. Not sick, scared. And I felt pretty cheap." He was worried for fear the State Bar would cite him to explain his conduct in endorsing a product. This anxiety lasted for several hours until he had examined his correspondence, which disclosed that he had not consented to the use of his name. A lawyer named Silbert asked him if he had also endorsed another machine. A couple of his friends twitted him over the use of his name, pretending to believe that in return the company had not only singled him out as a leader in his profession but had also paid him money. Altogether there were six or eight people who questioned plaintiff about the machine. No one accused him of unethical conduct. No one criticized him. His professional standing was not impaired in the minds of his friends.

■ Defendant contends that the judgment is excessive. We regard the award of $1,500 as generous, but not excessive as a matter of law. Plaintiff suffered some annoyance. We held on the former appeal, *Fairfield* v. *American Photocopy etc. Co., supra,* 138 Cal.App.2d 82, 88, upon substantially the same evidence, that it could not be said as a matter of law that plaintiff was entitled to no more than nominal damages and that in the appraisal of plaintiff's detriment the trial court would exercise a wide and elastic discretion. Upon the first trial the court, by its judgment of nonsuit, assessed plaintiff's damage at zero. We held that the evidence would have warranted an award of a substantial sum.

Fifteen hundred dollars was a substantial sum. Plaintiff pictured himself to the court as a person of fragile sensibilities. The court was not greatly impressed and stated that plaintiff had been annoyed and his time wasted and "I think there is a damage here but it is not great."

Defendant argues that the distinction of being publicized as a leading attorney was ample recompense for the slight annoyance which plaintiff suffered. The contention appears to be that since many celebrities exploit their fame by endorsing commercial products, the notoriety thus achieved must be desirable and beneficial. The argument is specious. No one would suspect that the endorsers of publicized products permit the use of their names except for money or for the mere satisfaction of seeing their names in print or on the screen. Plaintiff's situation was different. Defendant did not offer him any money. All of defendant's arguments fail in view of the fact that our former decision held it was within the dis-

cretion of the trial court to award substantial damages. That discretion has been properly exercised.

■ As previously stated, plaintiff gave notice of appeal from "so much of the order dated the 2nd day of August, 1956, which requires the plaintiff herein to remit the exemplary damages awarded to him in the above entitled action." In the remission of judgment plaintiff stated that he did not desire at that time to take an appeal "involving this small sum of $1,600," but he reserved the right to appeal if the defendant appealed from the judgment for compensatory damages.

By remitting the amount of the exemplary damages plaintiff avoided a retrial of the action and preserved his judgment for $1,500. He now seeks to retain the advantage he derived from denial of defendant's motion for a new trial and at the same time have his judgment for exemplary damages restored. Remission of the exemplary damages was the price he paid for denial of the motion for new trial.

■ It is settled that by agreeing to reduce the verdict and enter judgment for a lesser amount, a successful plaintiff waives his right to appeal, even though he made the remission under protest and the court may have erroneously found the verdict to be excessive. (*Conlin* v. *Southern Pac. R. R. Co.*, 40 Cal.App. 743 [182 P. 71]; 4 C.J.S. 635.)

■ In this nonjury case the proper procedure would have been for the court, in ruling on the motion for new trial, to change its findings by finding that defendant had not been guilty of oppression, fraud or malice, express or implied (Civ. Code, § 3294), and to modify its judgment so as to award plaintiff only compensatory damages of $1,500 (Code Civ. Proc., § 662).

The judgment and order are affirmed without costs to either party.

Wood (Parker), J., and Vallée, J., concurred.