Lothar MOTSCHENBACHER, Plaintiff-Appellant,

v.

R. J. REYNOLDS TOBACCO COMPANY, a corporation, and William Esty Company, Defendants-Appellees.

No. 72–1419.

United States Court of Appeals, Ninth Circuit.

June 6, 1974.

Robert Winckler, Los Angeles, Cal., for plaintiff-appellant.

Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., for defendants-appellees.

Before KOELSCH, HUFSTEDLER and TRASK, Circuit Judges.

## OPINION

KOELSCH, Circuit Judge:

Lothar Motschenbacher appeals from the district court's order granting summary judgment in favor of defendants in his suit seeking injunctive relief and damages for the alleged misappropriation of his name, likeness, personality, and endorsement in nationally televised advertising for Winston cigarettes. The jurisdiction of the district court is founded on diversity of citizenship, 28 U.S.C. § 1332; appellate jurisdiction is predicated on 28 U.S.C. § 1291.

The "facts" on which the district court rendered summary judgment are substantially as follows:[1] Plaintiff Motschenbacher is a professional driver of racing cars, internationally known and recognized in racing circles and by racing fans. He derives part of his income from manufacturers of commercial products who pay him for endorsing their products.

During the relevant time span, plaintiff has consistently "individualized" his cars to set them apart from those of other drivers and to make them more readily identifiable as his own. Since 1966, each of his cars has displayed a distinctive narrow white pinstripe appearing on no other car. This decoration has adorned the leading edges of the cars' bodies, which have uniformly been solid red. In addition, the white background for his racing number "11" has always been oval, in contrast to the circular backgrounds of all other cars.

In 1970, defendants, R. J. Reynolds Tobacco Company and William Esty Company, produced and caused to be televised a commercial which utilized a "stock" color photograph depicting several racing cars on a racetrack. Plaintiff's car appears in the foreground, and although plaintiff is the driver, his facial features are not visible.

In producing the commercial, defendants altered the photograph: they changed the numbers on all racing cars depicted, transforming plaintiff's number "11" into "71"; they "attached" a wing-like device known as a "spoiler" to plaintiff's car; they added the word "Winston," the name of their product, to that spoiler and removed advertisements for other products from the spoilers of other cars. However, they made no other changes, and the white pinstriping, the oval medallion, and the red color of plaintiff's car were retained. They then made a motion picture from the altered photograph, adding a series of comic strip-type "balloons" containing written messages of an advertising nature; one such balloon message, appearing to emanate from plaintiff, was: "Did you know that Winston tastes good, like a cigarette should?" They also added a sound track consisting in part of voices coordinated with, and echoing, the written messages. The commercial was subsequently broadcast nationally on network television and in color.

Several of plaintiff's affiants who had seen the commercial on television had immediately recognized plaintiff's car and had inferred that it was sponsored by Winston cigarettes.

On these facts the district court, characterizing plaintiff's action as one "for damages for invasion of privacy," granted summary judgment for defendants, finding as a matter of law that

" . . . [t]he driver of car No. 71 in the commercial (which was plaintiff's car No. 11 prior to said change of number and design) is anonymous; that is, (a) the person who is driving said car is unrecognizable and unidentified, and (b) a reasonable inference could not be drawn that he is, or could reasonably be understood to be plain-

---

1. We of course express no opinion regarding what facts the evidence may ultimately establish; we simply accept the statements of plaintiff's affiants as true for the purposes of the motion.

tiff, Lothar Motschenbacher, or any other driver or person." [2]

"Summary judgment of course is proper only where there is no genuine issue of any material fact or where viewing the evidence . . . in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *See* Stansifer v. Chrysler Motors Corporation, 487 F.2d 59, 63 (9th Cir. 1973), and cases cited therein.

Since the Winston commercial was broadcast on television throughout the United States, our initial inquiry in determining the correct legal standards to be applied on the motion for summary judgment is directed at the proper choice of law. In a diversity case, a federal court must follow the substantive law of the state in which it sits. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the conflict of laws rules of that state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Moore v. Greene, 431 F.2d 584, 589–590 (9th Cir. 1970).

In this case, we believe that California courts, under Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), would apply California local [3] law.[4] By the same token, noting the novelty of the factual situation presented and recognizing that the parties have each cited general case law in support of their respective positions, we think that California courts would not hesitate to consider relevant precedent from other jurisdictions in determining California local law.

In California, as in the vast majority of jurisdictions,[5] the invasion of an individual's right of privacy is an actionable tort. Melvin v. Reid, 112 Cal. App. 285, 297 P. 91 (1931).[6] In 1960

2. The district court concluded:
"3. Not having been identified in the commercial either visually, aurally, explicitly, or inferentially, plaintiff's action fails, and the Court is authorized to grant defendants' *Motion for Summary Judgment.*"

3. We employ the definition of "local law" set forth in Restatement (Second) of Conflict of Laws, § 4 (1971), as follows:
"[T]he 'local law' of a state is the body of standards, principles and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them."

4. First, it appears that California, the state of plaintiff's residency, has a greater interest in compensating its residents for injuries of the type here alleged than other jurisdictions may have in compensating foreigners so injured within their respective borders. Second, in cases of this type, the state of plaintiff's residency is normally the state of the greatest injury. Third, California, as the forum, has an interest in convenience and presumably can most easily ascertain its own law. And fourth, California's Uniform Single Publication Act (Civ.Code § 3425.3) effectively advances the universal interest in avoiding a multiplicity of suits and assisting the orderly administration of justice.

5. *Compare* Time, Inc. v. Hill, 385 U.S. 374, 383 n. 7, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) [citing Prosser, Law of Torts 831–832 (3d ed. 1964), for the proposition that "a 'right of privacy' has been recognized at *common law in 30 States plus the District of Columbia and by statute in 4 States*"], *with* Prosser, Law of Torts 804 (4th ed. 1971) [observing that "the right of privacy is by this time recognized and accepted in all but a very few jurisdictions" and noting at 804 n. 16 six jurisdictions recently added to the list.]

6. *See also* Briscoe v. Reader's Digest Association, Inc., 4 Cal.3d 529, 93 Cal.Rptr. 866, 483 P.2d 34 (1971); Carmel-By-The-Sea v. Young, 2 Cal.3d 259, 85 Cal.Rptr. 1, 466 P. 2d 225 (1970); Kapellas v. Kofman, 1 Cal. 3d 20, 81 Cal.Rptr. 360, 459 P.2d 912 (1969); Gill v. Hearst Publishing Co., 40 Cal.2d 224, 253 P.2d 441 (1953); Coverstone v. Davies, 38 Cal.2d 315, 239 P.2d 876 (1952); Gill v. Curtis Publishing Co., 38 Cal.2d 273, 239 P.2d 630 (1952); Stilson v. Reader's Digest Association, Inc., 28 Cal. App.3d 270, 104 Cal.Rptr. 581 (1972); Williams v. Weisser, 273 Cal.App.2d 726, 78 Cal.Rptr. 542 (1969); Grimes v. Carter, 241 Cal.App.2d 694, 50 Cal.Rptr. 808 (1966); Leavy v. Cooney, 214 Cal.App.2d 496, 29 Cal.Rptr. 580 (1963); Carlisle v. Fawcett Publications, 201 Cal.App.2d 733, 20 Cal.

Dean Prosser, drawing on over 300 cases, observed that the tort is actually a complex of four separate and distinct torts, each of which is decided under an "invasion of privacy" label. *See* Prosser, Privacy, 48 Calif.L.Rev. 383 (1960); Prosser, Law of Torts 804 (4th ed. 1971). Prosser's four categories are: (1) intrusion upon the plaintiff's seclusion or solitude; (2) public disclosure of private facts; (3) placing the plaintiff in a false light in the public eye; and (4) appropriation, for defendant's advantage, of plaintiff's name or likeness.[7] The case before us is of the fourth variety—commercial appropriation.[8]

California courts have observed that "[t]he gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community." Fairfield v. American Photocopy Equip. Co., 138 Cal.App.2d 82, 86, 291 P.2d 194, 197 (1955). But this observation is perhaps better applied to Prosser's first three categories than it is to the appropriation cases.

■ It is true that the injury suffered from an appropriation of the attributes of one's identity [9] may be "mental and subjective"—in the nature of humiliation, embarrassment, and outrage. *Fairfield, supra*, at 86, 291 P.2d 194. However, where the identity appropriated has a commercial value,[10] the injury may be largely, or even wholly, of an economic or material nature.[11] Such is

Rptr. 405 (1962); Werner v. Times-Mirror Co., 193 Cal.App.2d 111, 14 Cal.Rptr. 208 (1961); James v. Screen Gems, Inc., 174 Cal.App.2d 650, 344 P.2d 799 (1959); Kelly v. Johnson Publishing Co., 160 Cal.App.2d 718, 325 P.2d 659 (1958); Smith v. National Broadcasting Co., 138 Cal.App.2d 807, 292 P.2d 600 (1956); Fairfield v. American Photocopy Equip. Co., 138 Cal.App.2d 82, 291 P.2d 194 (1955); 158 Cal.App.2d 53, 322 P.2d 93 (1958); Stryker v. Republic Pictures Corp., 108 Cal.App.2d 191, 238 P.2d 670 (1951); Cohen v. Marx, 94 Cal.App.2d 704, 211 P.2d 320 (1949); Kerby v. Hal Roach Studios, 53 Cal.App.2d 207, 127 P.2d 577 (1942); Metter v. Los Angeles Examiner, 35 Cal.App.2d 304, 95 P.2d 491 (1939).

7. The California Supreme Court recognized Prosser's four-pronged system of classification in Kapellas v. Kofman, 1 Cal.3d 20, 81 Cal.Rptr. 360, 459 P.2d 912 (1969), at 36 n. 16, though it there suggested that a "false light" cause of action in California is equivalent to, and meets the same requirements of, a libel claim. *See also* Briscoe v. Reader's Digest Association, Inc., 4 Cal.3d 529, 543, 93 Cal.Rptr. 866, 483 P.2d 34 (1971).

8. In Fairfield v. American Photocopy Equip. Co., 138 Cal.App.2d 82, 291 P.2d 194 (1955), the California Court of Appeal observed at 86, 291 P.2d at 197:
"The exploitation of another's personality for commercial purposes constitutes one of the most flagrant and common means of invasion of privacy."

9. As Dean Prosser noted in his Law of Torts (4th ed. 1971), at 805–806:
"It is the plaintiff's name as a symbol of his identity that is involved here, and not as a mere name. Unless there is some tortious use made of it, there is no such thing as an exclusive right to the use of a name; and any one can be given or assume any name he likes. It is only when he makes use of the name to pirate the plaintiff's identity for some advantage of his own * * * that he becomes liable. It is in this sense that 'appropriation' must be understood."

10. It would be wholly unrealistic to deny that a name, likeness, or other attribute of identity can have commercial value. As the court observed in Uhlaender v. Henricksen, 316 F.Supp. 1277 (D.Minn.1970), at 1283:
"A name is commercially valuable as an endorsement of a product or for financial gain only because the public recognizes it and attributes good will and feats of skill or accomplishments of one sort or another to that personality."
*See also* notes 11 and 14, *infra*.

11. Generally, the greater the fame or notoriety of the identity appropriated, the greater will be the extent of the economic injury suffered. However, it is quite possible that the appropriation of the identity of a celebrity may induce humiliation, embarrassment and mental distress, while the appropriation of the identity of a relatively unknown person may result in economic injury or may it-

the nature of the injury alleged by plaintiff.

Some courts have protected this "commercial" aspect of an individual's interest in his own identity under a privacy theory. *See, e. g.,* Palmer v. Schonhorn Enterprises, Inc., 96 N.J.Super. 72, 232 A.2d 458 (1967); *see generally* Treece, Commercial Exploitation of Names, Likenesses, and Personal Histories, 51 Texas L.Rev. 637 (1973); Netterville, Copyright and Tort Aspects of Parody, Mimicry and Humorous Commentary, 35 S.Cal.L.Rev. 225, 253–254, 267–275 (1962); *and* Annotation, Invasion of Privacy by Use of Plaintiff's Name or Likeness in Advertising, 23 A.L.R.3d 865 (1969).

Others have sought to protect it under the rubric of "property" or a so-called "right of publicity." *See, e. g.,* Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481, 485–493 (3d Cir. 1956), cert. den., 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956); Haelan v. Topps Chewing Gum, 202 F.2d 866, 868 (2d Cir. 1953), cert. den., 346 U.S. 816, 74 S. Ct. 26, 98 L.Ed. 343 (1953), *noted in* Nimmer, The Right of Publicity, 19 Law & Contemp.Prob. 203 (1954), 62 Yale L.J. 1123 (1953), *and* 41 Geo.L.J. 583 (1953); Uhlaender v. Henricksen, 316 F.Supp. 1277, 1280–1283 (D.Minn.1970); Canessa v. J. I. Kislak, Inc., 97 N.J. Super. 327, 235 A.2d 62 (1967). *Cf.* Cepeda v. Swift & Co., 415 F.2d 1205, 1206 (8th Cir. 1969) (dictum); O'Brien v. Pabst Sales Co., 124 F.2d 167, 170–171 (5th Cir. 1941) (dissent); Sharman v. C. Schmidt & Sons, Inc., 216 F.Supp. 401, 407 (E.D.Pa., 1963) (dictum). *See also* Gordon, Right of Property in Name, Likeness, Personality and History, 55 Nw.U.L.Rev. 553 (1961).

Prosser synthesizes the approaches as follows:

"Although the element of protection of the plaintiff's personal feelings is obviously not to be ignored in such a case, the effect of the appropriation decisions is to recognize or create an exclusive right in the individual plaintiff to a species of trade name, his own, and a kind of trade mark in his likeness. It seems quite pointless to dispute over whether such a right is to be classified as 'property'; it is at least clearly proprietary in its nature. Once protected by the law, it is a right of value upon which the plaintiff can capitalize by selling licenses." (footnotes omitted)

Law of Torts (4th ed. 1971), at 807.

■■ So far as we can determine, California has no case in point; the state's appropriation cases uniformly appear to have involved only the "injury to personal feelings" aspect of the tort.[12] Nevertheless, from our review of the relevant authorities, we conclude that the California appellate courts would, in a case such as this one, afford legal protection to an individual's proprietary interest in his own identity. We need not decide whether they would do so under

self create economic value in what was previously valueless. In this latter context, *see* Canessa v. J. I. Kislak, Inc., 97 N.J.Super. 327, 235 A.2d 62, 75 (1967). *See also* Kalven, Privacy in Tort Law—Were Warren and Brandeis Wrong?, 31 Law & Contemp. Prob. 326, 331 (1966); Bloustein, Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser, 39 N.Y.U.L.Rev. 962, 985–991 (1964).

12. For example, in Kerby v. Hal Roach Studios, 53 Cal.App.2d 207, 127 P.2d 577 (1942), where an actress' name was appropriated in an advertisement which "cast doubt on her moral character," the court spoke only of the traditional compensation for injury to her feelings. 53 Cal.App.2d at 210, 127 P.2d at 580. Similarly, in *Fairfield, supra,* an attorney whose name, personality, and endorsement had been appropriated in an advertisement was compensated only "for injury to his peace of mind and to his feelings." 138 Cal.App.2d at 88, 291 P.2d at 198. And even in the recent decision in Stilson v. Reader's Digest Association, Inc., 28 Cal.App.3d 270, 104 Cal.Rptr. 581 (1972), the Court of Appeal reiterated that the injury in a privacy case is "mental and subjective." 28 Cal.App.3d at 274, 104 Cal.Rptr. 581.

the rubric of "privacy," [13] "property," [14] or "publicity"; [15] we only determine that they would recognize such an interest and protect it. [16]

We turn now to the question of "identifiability." Clearly, if the district court correctly determined as a matter of law that plaintiff is not identifiable

13. Two recent decisions, Williams v. Weisser, 273 Cal.App.2d 726, 78 Cal.Rptr. 542 (1969), and Stilson v. Reader's Digest Association, Inc., 28 Cal.App.3d 270, 104 Cal. Rptr. 581 (1972), suggest that a "commercial" interest in one's identity may be protected in California under the "privacy" rationale of *Fairfield*. In *Weisser*, a university professor brought suit for invasion of privacy and infringement of common law copyright when the defendant, without his consent, published student notes of plaintiff's classroom lectures under plaintiff's name. Plaintiff prevailed under both theories and was awarded compensatory damages based on a publisher's testimony of the commercial value of the notes. In *Stilson*, the court noted that "if commercial exploitation be found, [plaintiffs] would be entitled to nominal recoveries upon little more than an election to proceed" and that "each such plaintiff has an established right to show the mental anguish, as well as the financial detriment, which may have been caused to him by the use of his name in letters to * * * other persons. This * * * could well concern the status and business relationship to him of the recipients of the letters using his name." 28 Cal.App.3d at 273–274, 104 Cal.Rptr. at 583.

14. The interest may likewise be protectable as "property." In Yuba River Power Co. v. Nevada Irrigation District, 207 Cal. 521, 523, 279 P. 128, 129 (1929), a water rights case, the California Supreme Court said in construing a statute: "The term 'property' is sufficiently comprehensive to include every species of estate, real and personal, and everything which one person can own and transfer to another. It extends to every species of right and interest capable of being enjoyed as such upon which it is practicable to place a money value." In Republic Pictures Corp. v. Rogers, 213 F.2d 662, 665–666 (9th Cir. 1954), this court interpreted California law in a somewhat different context, observing that reproductions of the "name, voice and likeness" of a performer are valuable because of the notoriety of the performer and his great public following. And in a second appeal of *Fairfield, supra*, 158 Cal.App.2d 53, 56, 322 P.2d 93 (1958), relating to the question of damages, the California Court of Appeal recognized that the names of celebrities may have substantial commercial value. *Accord*, In Re Weingand,

231 Cal.App.2d 289, 293–294, 41 Cal.Rptr. 778 (1964).

15. Commentators have noted that at least two California trial courts have already recognized the "right of publicity." Gordon, *supra*, at 663–664; Note, Commercial Appropriation of an Individual's Name, Photograph or Likeness: A New Remedy for Californians, 3 Pacific L.J. 651, 663–664 (1972). While these decisions bind neither this court nor the appellate courts of California, we shall not deny their existence. Moreover, we place little reliance on Strickler v. National Broadcasting Company, 167 F.Supp. 68, 70 (S.D.Cal. 1958), in which the district court refused "to blaze the trail to establish in California a cause of action based upon the right of publicity" upon the plaintiff's specific admission that the right had not yet received recognition there. Furthermore, the factual situation in *Strickler* involved a "public disclosure of private facts" more than it did an "appropriation" and the district court notably upheld the plaintiff's complaint for invasion of privacy.

16. Two recent instances of the expression of California public policy lend additional support to our conclusion. First, Article I, § 1, of the California Constitution was amended in November, 1972, to include "pursuing and and obtaining * * * privacy" as an alienable right. And second, the California legislature recently enacted Civ.Code § 3344, providing that anyone who knowingly uses another's name, photograph, or likeness for purposes of advertising or solicitation shall be liable for any damages sustained by the persons injured, in an amount no less than $300. The "knowing use" requirement of the statute conflicts with the *Fairfield* language that "inadvertence or mistake is no defense where the publication does in fact refer to the plaintiff in such manner as to violate his right of privacy." However, one commentator has observed that inclusion of the "knowing use" requirement in the statute was occasioned by the penal damages which the bill initially provided for. *See* Note, Commercial Appropriation of an Individual's Name, Photograph or Likeness: A New Remedy for Californians, 3 Pacific L.J. 651, 659 (1972). Moreover, the statute's concluding subsection states that "[t]he remedies provided for in this section are cumulative and shall be in addition to any others provided for by law."

in the commercial, then in no sense has plaintiff's identity been misappropriated nor his interest violated.

 Having viewed a film of the commercial, we agree with the district court that the "likeness" of plaintiff is itself unrecognizable; however, the court's further conclusion of law to the effect that the driver is not identifiable as plaintiff is erroneous in that it wholly fails to attribute proper significance to the distinctive decorations appearing on the car. As pointed out earlier, these markings were not only peculiar to the plaintiff's cars but they caused some persons to think the car in question was plaintiff's and to infer that the person driving the car was the plaintiff.[17]

Defendant's reliance on Branson v. Fawcett Publications, Inc., 124 F.Supp. 429 (E.D.Ill.1954), is misplaced. In *Branson*, a part-time racing driver brought suit for invasion of privacy when a photograph of his overturned racing car was printed in a magazine without his consent. In ruling that "the photograph * * * does not identify the plaintiff to the public or any member thereof," 124 F.Supp. at 433, the court said:

"[T]he automobile is pointed upward in the air and the picture shows primarily the bottom of the racer. The backdrop of the picture is not distinguishable. No likeness, face, image, form or silhouette of the plaintiff or of any person is shown. From all that appears from the picture itself, there is no one in the car. Moreover, no identifying marks or numbers on the car appear. . . . Plaintiff does not even assert that the car he was driving was the same color as

that which appears in the colored reproduction."
124 F.Supp. at 432.

But in this case, the car under consideration clearly has a driver and displays several uniquely distinguishing features.

The judgment is vacated and the cause is remanded for further proceedings.[18]

---

17. The addition of a "Winston" spoiler to the plaintiff's car does not necessarily render the automobile impersonal, for plaintiff's cars have frequently used spoilers; it may be taken as contributing to the inference of sponsorship or endorsement. The alteration which may affect identifiability is the change in numbering, but this alteration does not preclude a finding of identifiability by the trier of fact.

18. We have no occasion to discuss the measure of damages in the instant case, and our conclusion renders consideration of whether plaintiff has a cause of action under the California law of trade names or unfair competition unnecessary.