2010 OK CIV APP 132

**Mark BRILL, Plaintiff/Appellant,**

v.

**The WALT DISNEY COMPANY; Pixar Animation Studios; Michael Wallis, Individually; and Michael Wallis, L.L.C., Defendants/Appellees.**

**No. 107249.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 23, 2010.

Certiorari Denied Nov. 1, 2010.

Reggie N. Whitten, Michael Burrage, Simone Gosnell Fulmer, Carin L. Marcussen, Whitten, Burrage, Priest, Fulmer, Anderson & Eisel, Oklahoma City, OK, and David Burrage, Burrage Law Firm, Durant, Oklahoma, for Plaintiff/Appellant.

Mack J. Morgan, III, Crowe & Dunlevy, Oklahoma City, OK, for Defendants/Appellees.

BAY MITCHELL, Judge.

¶ 1 Oklahoma stock race car driver Mark Brill, Plaintiff/Appellant ("Brill"), seeks review of an order granting Defendants/Appel-

lees', The Walt Disney Company, Pixar Animation Studios, Michael Wallis individually and Michael Wallis, LLC ("Defendants") respective Motions to Dismiss for failure to state a claim pursuant to 12 O.S.2001 § 2012(B)(6).[1] Specifically, Brill claims that the fictional animated race car character "Lightning McQueen" in the movie *Cars* constitutes a misappropriation of his likeness and violates his right of publicity pursuant to common law and 12 O.S.2001 § 1449. Additionally, Brill asserts a claim for common law trademark infringement, as well as claims for unfair and deceptive trade practices pursuant to 78 O.S. Supp.2004 § 53(A), unjust enrichment, and conspiracy.

¶ 2 Brill filed his original Petition in May 2008, with four subsequent amendments thereto.[2] Brill asserts that since 1995, he has driven a red race car with the number 95 painted on the doors in yellow. Further, he alleges his "race car is a 2–door body style with relatively long hood, swept back windshield, a distinctive tail fin and dirt track tires made by Goodyear." The record reflects Brill's vehicle is a modified Chevrolet Monte Carlo. Brill races at the Oklahoma State Fair Speedway as well as at tracks in Oklahoma City, Enid, Clinton and Ada, Oklahoma. Brill additionally owns and operates a machine shop, an auto repair shop, and a race track in Meeker, Oklahoma. Brill has allegedly used the image of his race car to promote his racing and businesses since 1996.

¶ 3 "Lightning McQueen" is the animated fictional talking car and rookie racing sensation featured in *Cars*. Lightning McQueen has no driver. The windshield depicts his eyes and the grill of the car displays a smiling face that talks. Lightning McQueen is a red race car of a fictional make/model with a large yellow lightning bolt painted on the side and the number 95 displayed in yellow over the lightning bolt. Lightning McQueen is covered with numerous fictitious sponsor

---

**1.** Because the motions included evidentiary materials for the court's consideration, they will be treated as motions for summary judgment rather than motions to dismiss. *Dyke v. Saint Francis Hosp.*, 1993 OK 114, ¶ 7, 861 P.2d 295, 299. The trial court's order dismissing Employee's petition is effectively, and will be considered, an order granting summary judgment.

**2.** The case was removed to Federal Court in July 2008, but ultimately transferred back to state court due to the lack of complete diversity.

stickers[3] such as Rust-eze Medicated Bumper Ointment, Lightyear tires and Gasprin Hood Ache Relief.

¶4 Defendant Michael Wallis[4] ("Wallis") was hired by Pixar Animation Studios ("Pixar") as a consultant in 2001, and he led the animators on a tour of Route 66 to assist them in their research in development of the *Cars* movie. Wallis's sworn Declaration, attached as Exhibit 2 to Defendants' Michael Wallis and Michael Wallis, LLC's Motion to Dismiss Plaintiff's Fourth Amended Petition and Brief in Support, provides that Wallis never visited a racetrack with the Pixar team, never met Brill, nor saw his race car. Wallis had no knowledge of Mark Brill or his car until after the filing of this lawsuit.

¶5 The appellate standard of review of a trial court's grant of summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, 920 P.2d 122. This Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. *Ross v. City of Shawnee*, 1984 OK 43, ¶7, 683 P.2d 535, 536. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Id.*

### Invasion of Privacy: Right of Publicity

¶6 In *McCormack v. Oklahoma Publishing Co.*, 1980 OK 98, ¶8, 613 P.2d 737, 740, the Oklahoma Supreme Court recognized the tort of invasion of privacy in the four categories[5] set out in the Restatement (Second) of Torts, § 652A (1977). Specifically applicable hereto is the third category of privacy invasion: "One who appropriates to his own use or benefit the name or **likeness** of another is subject to liability to the other for invasion of privacy." § 652C (emphasis added). A person's right of publicity is additionally protected by Oklahoma statute 12 O.S.2001 § 1449(A), which provides in pertinent part:

Any person who knowingly uses another's name, voice, signature, photograph, or **likeness,** in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof, and any profits from the unauthorized use that are attributable to the use shall be taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties. The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

(emphasis added).

¶7 Although the issue has been presented in the 10th Circuit, there is no prior reported Oklahoma state court decision addressing the right of publicity. Brill argues the common law right of publicity is broader than the statutory right in that the use of one's "identity" is actionable even if one's "likeness" or name is not used. We disagree. The common law right of publicity, as set forth in the Restatement, is limited to the appropriation of "the name or likeness of another." "The interest protected [in § 652C of the Restatement] is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his **name or likeness,** and insofar as the use

---

3. In fact, "Sally Carrera," one of the car characters in the movie, nicknamed him "Stickers," due to his distinctive and numerous sponsor stickers.

4. In addition to serving as a consultant for Pixar, Wallis also performed the voice of the Sheriff character in *Cars*. Additionally, Wallis wrote the text of the book *The Art of Cars*, which he finished writing in 2005.

5. These four categories of invasion of privacy include: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; and (d) publicity that unreasonably places the other in a false light before the public.

may be of benefit to him or to others." § 652C, Comment *a* (emphasis added). The statutory right of publicity "protect[s]" against the unauthorized use of certain features of a person's identity—such as **name, likeness, or voice**—for commercial purposes." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959 (10th Cir.1996)(emphasis added). Thus, the issue for us is whether Lightning McQueen does not constitute a "likeness" of Brill as a matter of law. The similarities in the appearance of Brill's race car and Lightning McQueen are that they are both red race cars and have the yellow number 95 on the side. The similarities, according to Brill, are "so striking that it defies explanation as mere chance." Further, Brill argues that his red number 95 stock car is **his** likeness and/or identity.

¶ 8 The phrase "name or likeness" "embraces the concept of a person's character, which is legally protected against appropriation by another for his or her own use or benefit." AM. JUR.2d *Privacy* § 71 (2010). "The term 'likeness' does not include general incidents from a person's life, especially when fictionalized.... The term 'likeness' includes such things as pictures and the use of a singer's distinctive voice." *Id.*

■ ¶ 9 In *Cardtoons*, the court held a company's use of player likenesses on its cards violated the Oklahoma right of publicity statute and infringed on the players association's property rights. The *Cardtoons* decision includes a discussion of *White v.* *Samsung Electronics America*, 971 F.2d 1395 (9th Cir.), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993), which construed California right of publicity law. In *White*, the defendant had published an advertisement featuring a costumed robot that parodied Vanna White, the letter-turner on the "Wheel of Fortune" television gameshow. The *White* court determined the robot did not constitute a "likeness" of Vanna White within the meaning of California statutory law.[6] While a federal court decision is not binding or controlling on an Oklahoma court construing Oklahoma law, it is persuasive in the absence of authoritative state law. *See Johnson v. Ford Motor Co.*, 2002 OK 24, ¶ 26, 45 P.3d 86, 95. We find that just as a mechanical robot with a blonde wig standing in front of a game board resembling a famous game show wheel cannot be construed as a likeness to Vanna White, a fictional, talking, driver-less red race car with the number 95 on it cannot be construed as a likeness of a driver of a similarly colored/numbered race car.

¶ 10 In order to establish a *prima facie* case of statutory violation of the right of publicity, a plaintiff must plead facts establishing the three elements of the claim: (1) Defendants knowingly used Brill's name or likeness, (2) on products, merchandise or goods, (3) without Brill's prior consent. Just as under the Restatement, the statute only concerns the use of another **person's** name, voice, signature, photograph or likeness, not the name, photograph or likeness of another

---

6. However, the 9th Circuit in *White* determined the robot represented Vanna White's "identity," which was protected by the California common law right of publicity. *White,* 971 F.2d at 1399. The court reached its determination upon a review of 9th Circuit and 6th Circuit case law (construing California and Michigan state law), which demonstrates that the common law right of publicity, as construed in those states, is not limited to the appropriation of name or likeness. *Id.* at 1398. In those cases, the courts determined that although the defendant had not appropriated the name or likeness, a fact question existed as to the appropriation of plaintiff's identity pursuant to common law right of publicity. *See Motschenbacher v. R.J. Reynolds Tobacco Co.,* 498 F.2d 821 (9th Cir.1974) (holding the use of a photograph of plaintiff's race car, along with the depiction of plaintiff driving the car in the photograph, in a television commercial was sufficient to reach the jury for violation of plaintiff's California common law right of publicity); and *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir.1983) (holding the defendant had appropriated Johnny Carson's identity by using the phrase "Here's Johnny" in advertisements in accordance with the Michigan common law right of publicity.) The 10th Circuit in *Cardtoons,* however, expressly disagreed with the result in *White* for the reasons discussed in the dissent therein. The dissent in *White* primarily criticizes the majority's authorizing recovery upon a finding of appropriation of one's identity without a requisite showing of use of a likeness under California common law, noting "I cannot find any holding of a California court that supports this conclusion." *Id.* at 1402 (Alarcon, Circuit Judge, concurring in part, dissenting in part).

person's car.[7] Regardless of the purported similarities of Brill's car to Lightning McQueen, those similarities without more simply do not equate to a knowing use of Brill's personal likeness. The law does not support a contrary interpretation of these facts.

¶ 11 Brill cites *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir.1974) in support of his proposition that a race car driver's identity extends to the likeness of his car. Brill misconstrues the holding of *Motschenbacher*. The defendant in *Motschenbacher* used a picture of the driver/plaintiff's race car in an advertisement. While the car in the advertisement had been altered from the appearance of plaintiff's actual race car, (the defendant removed the plaintiff's sponsors, changed the number, added a spoiler, and added itself to the car as a sponsor), the **plaintiff appeared to be driving the car in the advertisement** (although his features were not clearly visible). The court reversed the summary judgment for defendant, emphasizing the critical fact that the car in the advertisement clearly had a driver, which implied that the person driving the car was plaintiff. *Id.* at 827.

¶ 12 Unlike *Motschenbacher*, the car in this case is a fictional, animated, talking car that clearly has no driver. The image of Lightning McQueen raises no inference of a driver, and thus implicates no driver's right of publicity protected by common law or statute. The law protects people's right of publicity (as opposed to their cars). Defendants' use of the talking car character, Lightning McQueen, in no way constitutes an unauthorized use of Brill's likeness for commercial purposes and thus, does not violate Brill's statutory and/or common law right of publicity as a matter of law.

*Trademark Infringement*

■■■■ ¶ 13 Brill contends Defendants' use of Lightning McQueen constitutes *common law* trademark infringement because of his prior use of the image of a red race car with the number 95.[8] "Prior registration of a trademark is but only prima facie evidence of the exclusive ownership of a particular mark." *D.W.G., Inc. v. Gordon's Jewelry Co.*, 1981 OK 69, 635 P.2d 326, 328. The record, however, discloses no trademark registration by Brill. In order to establish a *prima facie* common law trademark infringement claim, plaintiff must show (1) ownership of a valid trademark and (2) likelihood of consumer confusion. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004). We find Brill failed to demonstrate common law ownership of a valid trademark (and we thus need not reach the issue of consumer confusion).

■■■■ ¶ 14 Despite Brill's assertion that "number + color = trademark," Brill cites no law in support of this assertion. Additionally, while he notes he has "licensed the number 95 for his exclusive use from the Oklahoma State Fair Speedway," this license does not give him any rights outside that particular speedway, much less rise to the level of trademark protection. Despite Brill's assertion that he has the exclusive right to drive a red race car with the number 95 on it, his argument lacks merit because numbers and colors on race cars serve a primary functional purpose for which the law provides no trademark protection. Where a mark's primary purpose is functional and has no secondary meaning, such a mark is not eligible for trademark protection. *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 517 (10th Cir.1987); *see Qualitex v. Jacobson Products*, 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (applying same rule in the context of trademark protection of a product's color).[9] To achieve "secondary

---

**7.** Title 12 O.S. § 1449(B.) defines "photograph" as "any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable."

**8.** Brill apparently dropped his *statutory* trademark infringement claim pursuant to 78 O.S. § 31, as he failed to include it in his Fourth Amended Petition.

**9.** "Although the party may not have a federally registered trademark, the product may have an image or look, referred to as 'trade dress,' that is so distinctive as to become an unregistered trademark eligible for protection.... Although historically trade dress infringement consisted of copying a product's packaging, ... 'trade dress' in its more modern sense [may] refer to the appearance of the [product] itself.... Generally,

meaning," the public must come to associate the mark with its source rather than with the product itself. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

¶ 15 While Brill strenuously argues his car's color/number scheme is so distinctive[10] as to warrant trademark protection, he offered no evidence of this beyond his mere assertion that the combination of number/color serves a non-functional purpose. Clearly, numbers on race cars serve a functional purpose to distinguish the competing racers. Clearly, too, the number 95 has been used for many years on other race cars, thus Brill's claim of exclusive use is without merit. Brill similarly fails to demonstrate requisite secondary meaning, *i.e.*, that in the minds of the public, the **primary significance** of the color/number of his race car identifies *him* rather than the car itself. Thus, Brill's claim that his race car is "inherently distinctive" lacks merit. Brill's common law trademark infringement claim fails as a matter of law.

### Deceptive Trade Practice

¶ 16 Brill contends Defendants "knowingly make a false representation" as to the source, sponsorship, or approval of their goods in violation of the Oklahoma Deceptive Trade Practices Act, 78 O.S. Supp. 2004 § 53(A)(2),(3), and (5).[11] "It is a de-

ceptive trade practice to misappropriate the trade name of another." *Bell v. Davidson,* 1979 OK 66, ¶ 4, 597 P.2d 753, 754. As defined in the Act, "trade name" "means a word, name, symbol, device, or any combination of the foregoing in any form of arrangement used by a person to identify his business, vocation, or occupation and to distinguish it from the business, vocation, or occupation of others." 78 O.S.2001 § 52.

¶ 17 Brill contends Defendants knowingly misrepresent that Lightning McQueen is their creation, "when in fact Lightning McQueen's image was stolen from Brill." In support of this argument, Brill cites *Carpet City v. Carpet Land,* 1958 OK 213, ¶ 16, 335 P.2d 355, 358 (noting "if the use of the trade name, design or symbol in itself is not objectionable as unfair competition [but] is coupled with overt acts or conduct by the use of which the competitor intended to mislead and deceive the public ... equity will enjoin its use as an infringement on the right of the first to fair competition."). The record does not reflect any indicia of an intent to mislead or deceive the public by the Defendants as to the origin of Lightning McQueen. Further, the record reveals no evidence in support of Brill's contention that Defendants stole the image of Lightning McQueen from Brill.

¶ 18 The record contains evidence of the origin of Lightning McQueen's name (a nod

---

to be eligible for protection, the product's 'trade dress' must be nonfunctional and have acquired a secondary meaning." *Brunswick,* 832 F.2d at 517 (citations omitted). Brill contends that while "trade dress" law is related to trademark, it is inapplicable here.

10. "[C]ourts have held that a mark can be distinctive in one of two ways. First, a mark is inherently distinctive if '[its] intrinsic nature serves to identify a particular source.' ... In the context of word marks, courts have applied the now-classic test originally formulated by Judge Friendly, in which word marks that are 'arbitrary' ("Camel" cigarettes), 'fanciful' ("Kodak" film), or 'suggestive' ("Tide" laundry detergent) are held to be inherently distinctive. Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.' " *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 210–

211, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (citations omitted). "In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist." *Id.* at 212–13, 120 S.Ct. 1339.

11. 78 O.S. Supp 2004 § 53A. A person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person:

1. Passes off goods or services as those of another;
2. Knowingly makes a false representation as to the source, sponsorship, approval, or certification of goods or services;
3. Knowingly makes a false representation as to affiliation, connection, association with, or certification by another;
....
5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith.

to actor Steve McQueen and animator Glenn McQueen, who died of cancer early in production of the film), along with the reason for the selection of Lightning McQueen's number 95 (the year the first computer animated feature film, *Toy Story*, was released).[12] Defendant Michael Wallis's sworn Declaration reveals he never visited a racetrack with the Pixar team, nor did he ever see Brill's race car during the development of the *Cars* movie. Thus, we find the evidence pertaining to the origin of Lightning McQueen leads only to the reasonable inference that the similarities of Brill's car and Lightning McQueen are coincidental. The fact that there may be similar features in Lighting McQueen and Brill's race car does not rise to the level of a false representation as to Lightning McQueen's source or "passing off" the fictional car as that of Brill's car to constitute a deceptive trade practice within the meaning of the Oklahoma Deceptive Trade Practices Act.

¶ 19 Brill's remaining claims for unjust enrichment and conspiracy are merely derivative of the trademark and right of publicity claims. Inasmuch as Brill cannot establish those claims as a matter of law, his derivative claims likewise fail.

¶ 20 This Court's *de novo* review of the record supports the trial court's grant of summary judgment and it is accordingly AFFIRMED.

JOPLIN, P.J., concurs; BELL, V.C.J., dissents.

---

12. The "Lightning" part of the name was selected because the creators loved the name. Notably, along the sides of Lightning McQueen (under the number 95) is a large yellow lightning bolt, which extends from across the door panel and gradually expands over the back tire. Brill's race car does **not** include this distinctive lightning bolt design.