698 F.2d 831
 218 U.S.P.Q. 1, 9 Media L. Rep. 1153
 John W. CARSON, d/b/a Johnny Carson, an individual, and
Johnny Carson Apparel, Inc., a corporation,
Plaintiffs-Appellants,
v.
HERE'S JOHNNY PORTABLE TOILETS, INC., a corporation,
Defendant-Appellee.
 No. 80-1720.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 26, 1982.
Decided Feb. 1, 1983.
 
 Robert M. Newbury (argued), Pattishall, McAuliffe & Hofstetter, Chicago, Ill., James W. Goss, Miller, Canfield, Paddock & Stone, Birmingham, Mich., for plaintiffs-appellants.
 Allen M. Krass (argued), Krass & Young, Troy, Mich., for defendant-appellee.
 Before KENNEDY, Circuit Judge, BROWN* and SWYGERT** Senior Circuit Judges.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 This case involves claims of unfair competition and invasion of the right of privacy and the right of publicity arising from appellee's adoption of a phrase generally associated with a popular entertainer.
 
 
 2
 Appellant, John W. Carson (Carson), is the host and star of "The Tonight Show," a well-known television program broadcast five nights a week by the National Broadcasting Company. Carson also appears as an entertainer in night clubs and theaters around the country. From the time he began hosting "The Tonight Show" in 1962, he has been introduced on the show each night with the phrase "Here's Johnny." This method of introduction was first used for Carson in 1957 when he hosted a daily television program for the American Broadcasting Company. The phrase "Here's Johnny" is generally associated with Carson by a substantial segment of the television viewing public. In 1967, Carson first authorized use of this phrase by an outside business venture, permitting it to be used by a chain of restaurants called "Here's Johnny Restaurants."
 
 
 3
 Appellant Johnny Carson Apparel, Inc. (Apparel), formed in 1970, manufactures and markets men's clothing to retail stores. Carson, the president of Apparel and owner of 20% of its stock, has licensed Apparel to use his name and picture, which appear on virtually all of Apparel's products and promotional material. Apparel has also used, with Carson's consent, the phrase "Here's Johnny" on labels for clothing and in advertising campaigns. In 1977, Apparel granted a license to Marcy Laboratories to use "Here's Johnny" as the name of a line of men's toiletries. The phrase "Here's Johnny" has never been registered by appellants as a trademark or service mark.
 
 
 4
 Appellee, Here's Johnny Portable Toilets, Inc., is a Michigan corporation engaged in the business of renting and selling "Here's Johnny" portable toilets. Appellee's founder was aware at the time he formed the corporation that "Here's Johnny" was the introductory slogan for Carson on "The Tonight Show." He indicated that he coupled the phrase with a second one, "The World's Foremost Commodian," to make "a good play on a phrase."
 
 
 5
 Shortly after appellee went into business in 1976, appellants brought this action alleging unfair competition, trademark infringement under federal and state law, and invasion of privacy and publicity rights. They sought damages and an injunction prohibiting appellee's further use of the phrase "Here's Johnny" as a corporate name or in connection with the sale or rental of its portable toilets.
 
 
 6
 After a bench trial, the district court issued a memorandum opinion and order, Carson v. Here's Johnny Portable Toilets, Inc., 498 F.Supp. 71 (E.D.Mich.1980), which served as its findings of fact and conclusions of law. The court ordered the dismissal of the appellants' complaint. On the unfair competition claim, the court concluded that the appellants had failed to satisfy the "likelihood of confusion" test. On the right of privacy and right of publicity theories, the court held that these rights extend only to a "name or likeness," and "Here's Johnny" did not qualify.
 
 I.
 
 7
 Appellants' first claim alleges unfair competition from appellee's business activities in violation of Sec. 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a) (1976), and of Michigan common law. The district court correctly noted that the test for equitable relief under both Sec. 43(a) and Michigan common law is the "likelihood of confusion" standard. Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642 (6th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982); Wills v. Alpine Valley Ski Area, Inc., 369 Mich. 23, 118 N.W.2d 954 (1963).
 
 
 8
 In Frisch's Restaurants we approved the balancing of several factors in determining whether a likelihood of confusion exists among consumers of goods involved in a Sec. 43(a) action. In that case we examined eight factors:
 
 
 9
 1. strength of the plaintiff's mark;
 
 
 10
 2. relatedness of the goods;
 
 
 11
 3. similarity of the marks;
 
 
 12
 4. evidence of actual confusion;
 
 
 13
 5. marketing channels used;
 
 
 14
 6. likely degree of purchaser care;
 
 
 15
 7. defendant's intent in selecting the mark;
 
 
 16
 8. likelihood of expansion of the product lines.
 
 
 17
 670 F.2d at 648. The district court applied a similar analysis. Under the two-step process adopted in Frisch's Restaurants, these eight foundational factors are factual and subject to a clearly erroneous standard of review, while the weighing of these findings on the ultimate issue of the likelihood of confusion is a question of law. 670 F.2d at 651.
 
 
 18
 The district court first found that "Here's Johnny" was not such a strong mark that its use for other goods should be entirely foreclosed. 498 F.Supp. at 74. Although the appellee had intended to capitalize on the phrase popularized by Carson, the court concluded that appellee had not intended to deceive the public into believing Carson was connected with the product. Id. at 75. The court noted that there was little evidence of actual confusion and no evidence that appellee's use of the phrase had damaged appellants. For these reasons, the court determined that appellee's use of the phrase "Here's Johnny" did not present a likelihood of confusion, mistake, or deception. Id. at 75-77.
 
 
 19
 Our review of the record indicates that none of the district court's findings is clearly erroneous. Moreover, on the basis of these findings, we agree with the district court that the appellants have failed to establish a likelihood of confusion. The general concept underlying the likelihood of confusion is that the public believe that "the mark's owner sponsored or otherwise approved the use of the trademark." Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 79 (2d Cir.1981) (emphasis added) (quoting Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir.1979)).
 
 
 20
 The facts as found by the district court do not implicate such likelihood of confusion, and we affirm the district court on this issue.
 
 II.
 
 21
 The appellants also claim that the appellee's use of the phrase "Here's Johnny" violates the common law right of privacy and right of publicity.[1] The confusion in this area of the law requires a brief analysis of the relationship between these two rights.
 
 
 22
 In an influential article, Dean Prosser delineated four distinct types of the right of privacy: (1) intrusion upon one's seclusion or solitude, (2) public disclosure of embarrassing private facts, (3) publicity which places one in a false light, and (4) appropriation of one's name or likeness for the defendant's advantage. Prosser, Privacy, 48 Calif.L.Rev. 383, 389 (1960). This fourth type has become known as the "right of publicity." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 220 (2d Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); see Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 572, 97 S.Ct. 2849, 2855, 53 L.Ed.2d 965 (1977). Henceforth we will refer to Prosser's last, or fourth, category, as the "right of publicity."
 
 
 23
 Dean Prosser's analysis has been a source of some confusion in the law. His first three types of the right of privacy generally protect the right "to be let alone," while the right of publicity protects the celebrity's pecuniary interest in the commercial exploitation of his identity. Zacchini, supra, 433 U.S. at 573, 97 S.Ct. at 2856. See generally The Right of Publicity--Protection for Public Figures and Celebrities, 42 Brooklyn L.Rev. 527 (1976). Thus, the right of privacy and the right of publicity protect fundamentally different interests and must be analyzed separately.
 
 
 24
 We do not believe that Carson's claim that his right of privacy has been invaded is supported by the law or the facts. Apparently, the gist of this claim is that Carson is embarrassed by and considers it odious to be associated with the appellee's product. Clearly, the association does not appeal to Carson's sense of humor. But the facts here presented do not, it appears to us, amount to an invasion of any of the interests protected by the right of privacy. In any event, our disposition of the claim of an invasion of the right of publicity makes it unnecessary for us to accept or reject the claim of an invasion of the right of privacy.
 
 
 25
 The right of publicity has developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the promotion of products, and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity. In Memphis Development Foundation v. Factors Etc., Inc., 616 F.2d 956 (6th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), we stated: "The famous have an exclusive legal right during life to control and profit from the commercial use of their name and personality." Id. at 957.
 
 
 26
 The district court dismissed appellants' claim based on the right of publicity because appellee does not use Carson's name or likeness. 498 F.Supp. at 77. It held that it "would not be prudent to allow recovery for a right of publicity claim which does not more specifically identify Johnny Carson." 498 F.Supp. at 78. We believe that, on the contrary, the district court's conception of the right of publicity is too narrow. The right of publicity, as we have stated, is that a celebrity has a protected pecuniary interest in the commercial exploitation of his identity. If the celebrity's identity is commercially exploited, there has been an invasion of his right whether or not his "name or likeness" is used. Carson's identity may be exploited even if his name, John W. Carson, or his picture is not used.
 
 
 27
 In Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821 (9th Cir.1974), the court held that the unauthorized use of a picture of a distinctive race car of a well known professional race car driver, whose name or likeness were not used, violated his right of publicity. In this connection, the court said:
 
 
 28
 We turn now to the question of "identifiability." Clearly, if the district court correctly determined as a matter of law that plaintiff is not identifiable in the commercial, then in no sense has plaintiff's identity been misappropriated nor his interest violated.
 
 
 29
 Having viewed a film of the commercial, we agree with the district court that the "likeness" of plaintiff is itself unrecognizable; however, the court's further conclusion of law to the effect that the driver is not identifiable as plaintiff is erroneous in that it wholly fails to attribute proper significance to the distinctive decorations appearing on the car. As pointed out earlier, these markings were not only peculiar to the plaintiff's cars but they caused some persons to think the car in question was plaintiff's and to infer that the person driving the car was the plaintiff.
 
 
 30
 Id. at 826-827 (footnote omitted).
 
 
 31
 In Ali v. Playgirl, Inc., 447 F.Supp. 723 (S.D.N.Y.1978), Muhammad Ali, former heavyweight champion, sued Playgirl magazine under the New York "right of privacy" statute and also alleged a violation of his common law right of publicity. The magazine published a drawing of a nude, black male sitting on a stool in a corner of a boxing ring with hands taped and arms outstretched on the ropes. The district court concluded that Ali's right of publicity was invaded because the drawing sufficiently identified him in spite of the fact that the drawing was captioned "Mystery Man." The district court found that the identification of Ali was made certain because of an accompanying verse that identified the figure as "The Greatest." The district court took judicial notice of the fact that "Ali has regularly claimed that appellation for himself." Id. at 727.
 
 
 32
 In Hirsch v. S.C. Johnson & Son, Inc., 90 Wis.2d 379, 280 N.W.2d 129 (1979), the court held that use by defendant of the name "Crazylegs" on a shaving gel for women violated plaintiff's right of publicity. Plaintiff, Elroy Hirsch, a famous football player, had been known by this nickname. The court said:
 
 
 33
 The fact that the name, "Crazylegs," used by Johnson, was a nickname rather than Hirsch's actual name does not preclude a cause of action. All that is required is that the name clearly identify the wronged person. In the instant case, it is not disputed at this juncture of the case that the nickname identified the plaintiff Hirsch. It is argued that there were others who were known by the same name. This, however, does not vitiate the existence of a cause of action. It may, however, if sufficient proof were adduced, affect the quantum of damages should the jury impose liability or it might preclude liability altogether. Prosser points out "that a stage or other fictitious name can be so identified with the plaintiff that he is entitled to protection against its use." 49 Cal.L.Rev., supra at 404. He writes that it would be absurd to say that Samuel L. Clemens would have a cause of action if that name had been used in advertising, but he would not have one for the use of "Mark Twain." If a fictitious name is used in a context which tends to indicate that the name is that of the plaintiff, the factual case for identity is strengthened. Prosser, supra at 403.
 
 
 34
 280 N.W.2d at 137.
 
 
 35
 In this case, Earl Braxton, president and owner of Here's Johnny Portable Toilets, Inc., admitted that he knew that the phrase "Here's Johnny" had been used for years to introduce Carson. Moreover, in the opening statement in the district court, appellee's counsel stated:
 
 
 36
 Now, we've stipulated in this case that the public tends to associate the words "Johnny Carson", the words "Here's Johnny" with plaintiff, John Carson and, Mr. Braxton, in his deposition, admitted that he knew that and probably absent that identification, he would not have chosen it.
 
 
 37
 App. 68. That the "Here's Johnny" name was selected by Braxton because of its identification with Carson was the clear inference from Braxton's testimony irrespective of such admission in the opening statement.
 
 
 38
 We therefore conclude that, applying the correct legal standards, appellants are entitled to judgment. The proof showed without question that appellee had appropriated Carson's identity in connection with its corporate name and its product.[2]
 
 
 39
 Although this opinion holds only that Carson's right of publicity was invaded because appellee intentionally appropriated his identity for commercial exploitation, the dissent, relying on its interpretation of the authorities and relying on policy and constitutional arguments, would hold that there was no invasion here. We do not believe that the dissent can withstand fair analysis.
 
 
 40
 The dissent contends that the authorities hold that the right of publicity is invaded only if there has been an appropriation of the celebrity's "name, likeness, achievements, identifying characteristics or actual performances." After so conceding that the right is at least this broad, the dissent then attempts to show that the authorities upon which the majority opinion relies are explainable as involving an appropriation of one or more of these attributes. The dissent explains Motschenbacher, supra, where the advertisement used a photograph, slightly altered, of the plaintiff's racing car, as an "identifying characteristic" case. But the dissent fails to explain why the photograph any more identified Motschenbacher than the phrase "Here's Johnny" identifies appellant Carson. The dissent explains Hirsch, supra, by pointing out that there the use of the appellation "Crazylegs" by the defendant was in a "context" that suggested a reference to Hirsch and that therefore Hirsch was identified by such use. Here, the dissent states, there is no evidence of the use of "Here's Johnny" in such a suggestive "context." Putting aside the fact that appellee also used the phrase "The World's Foremost Commodian," we fail to see why "context" evidence is necessary where appellee's president admitted that it adopted the name "Here's Johnny" because it identified appellant Carson. We do not understand appellee to even contend that it did not successfully accomplish its intended purpose of appropriating his identity. The dissent explains Ali, supra, by pointing out that in that case the magazine used a drawing that "strongly suggests" it to be a representation of the famous fighter, but it is also true that the court put emphasis on the fact that the subject of the drawing was referred to as "The Greatest," which "further implied" that the individual was Ali. 447 F.Supp. at 726-727.
 
 
 41
 It should be obvious from the majority opinion and the dissent that a celebrity's identity may be appropriated in various ways. It is our view that, under the existing authorities, a celebrity's legal right of publicity is invaded whenever his identity is intentionally appropriated for commercial purposes. We simply disagree that the authorities limit the right of publicity as contended by the dissent.[3] It is not fatal to appellant's claim that appellee did not use his "name." Indeed, there would have been no violation of his right of publicity even if appellee had used his name, such as "J. William Carson Portable Toilet" or the "John William Carson Portable Toilet" or the "J.W. Carson Portable Toilet." The reason is that, though literally using appellant's "name," the appellee would not have appropriated Carson's identity as a celebrity. Here there was an appropriation of Carson's identity without using his "name."
 
 
 42
 With respect to the dissent's general policy arguments, it seems to us that the policies there set out would more likely be vindicated by the majority view than by the dissent's view. Certainly appellant Carson's achievement has made him a celebrity which means that his identity has a pecuniary value which the right of publicity should vindicate. Vindication of the right will tend to encourage achievement in Carson's chosen field. Vindication of the right will also tend to prevent unjust enrichment by persons such as appellee who seek commercially to exploit the identity of celebrities without their consent.[4]
 
 
 43
 The dissent also suggests that recognition of the right of publicity here would somehow run afoul of federal monopoly policies and first amendment proscriptions. If, as the dissent seems to concede, such policies and proscriptions are not violated by the vindication of the right of publicity where the celebrity's "name, likeness, achievements, identifying characteristics or actual performances" have been appropriated for commercial purposes, we cannot see why the policies and proscriptions would be violated where, as here, the celebrity's identity has admittedly been appropriated for commercial exploitation by the use of the phrase "Here's Johnny Portable Toilets."
 
 
 44
 The judgment of the district court is vacated and the case remanded for further proceedings consistent with this opinion.
 
 
 45
 CORNELIA G. KENNEDY, Circuit Judge, dissenting.
 
 
 46
 I respectfully dissent from that part of the majority's opinion which holds that appellee's use of the phrase "Here's Johnny" violates appellant Johnny Carson's common law right of publicity. While I agree that an individual's identity may be impermissibly exploited, I do not believe that the common law right of publicity may be extended beyond an individual's name, likeness, achievements, identifying characteristics or actual performances, to include phrases or other things which are merely associated with the individual, as is the phrase "Here's Johnny." The majority's extension of the right of publicity to include phrases or other things which are merely associated with the individual permits a popular entertainer or public figure, by associating himself or herself with a common phrase, to remove those words from the public domain.
 
 
 47
 The phrase "Here's Johnny" is merely associated with Johnny Carson, the host and star of "The Tonight Show" broadcast by the National Broadcasting Company. Since 1962, the opening format of "The Tonight Show," after the theme music is played, is to introduce Johnny Carson with the phrase "Here's Johnny." The words are spoken by an announcer, generally Ed McMahon, in a drawn out and distinctive manner. Immediately after the phrase "Here's Johnny" is spoken, Johnny Carson appears to begin the program.[1] This method of introduction was first used by Johnny Carson in 1957 when he hosted a daily television show for the American Broadcasting Company. This case is not transformed into a "name"[2] case simply because the diminutive form of John W. Carson's given name and the first name of his full stage name, Johnny Carson, appears in it. The first name is so common, in light of the millions of persons named John, Johnny or Jonathan that no doubt inhabit this world, that, alone, it is meaningless or ambiguous at best in identifying Johnny Carson, the celebrity. In addition, the phrase containing Johnny Carson's first stage name was certainly selected for its value as a double entendre.[3] Appellee manufactures portable toilets. The value of the phrase to appellee's product is in the risque meaning of "john" as a toilet or bathroom.[4] For this reason, too, this is not a "name" case.
 
 
 48
 Appellee has stipulated that the phrase "Here's Johnny" is associated with Johnny Carson and that absent this association, he would not have chosen to use it for his product and corporation, Here's Johnny Portable Toilets, Inc. I do not consider it relevant that appellee intentionally chose to incorporate into the name of his corporation and product a phrase that is merely associated with Johnny Carson. What is not protected by law is not taken from public use. Research reveals no case in which the right of publicity has been extended to phrases or other things which are merely associated with an individual and are not part of his name, likeness, achievements, identifying characteristics or actual performances. Both the policies behind the right of publicity and countervailing interests and considerations indicate that such an extension should not be made.
 
 I. Policies Behind Right of Publicity
 
 49
 The three primary policy considerations behind the right of publicity are succinctly stated in Hoffman, Limitations on the Right of Publicity, 28 Bull. Copr. Soc'y, 111, 116-22 (1980). First, "the right of publicity vindicates the economic interests of celebrities, enabling those whose achievements have imbued their identities with pecuniary value to profit from their fame." Id. 116; Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 573, 575-76, 97 S.Ct. 2849, 2857-58, 53 L.Ed. 965 (1977). Second, the right of publicity fosters "the production of intellectual and creative works by providing the financial incentive for individuals to expend the time and resources necessary to produce them." Limitations on the Right of Publicity, supra, 118; Zacchini, supra, 433 U.S. at 575-76, 97 S.Ct. at 2857-58. Third, "[t]he right of publicity serves both individual and societal interests by preventing what our legal tradition regards as wrongful conduct: unjust enrichment and deceptive trade practices." Limitations on the Right of Publicity, supra, 118; Zacchini, supra, 433 U.S. at 580 n. 2, 97 S.Ct. at 2860 n. 2 (Powell, J., dissenting) (unjust enrichment argument); University of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp., 15 N.Y.2d 940, 207 N.E.2d 508, 511-513, 259 N.Y.S.2d 832, 837-38 (1965) (dissent) (deceptive trade practices argument).
 
 
 50
 None of the above-mentioned policy arguments supports the extension of the right of publicity to phrases or other things which are merely associated with an individual. First, the majority is awarding Johnny Carson a windfall, rather than vindicating his economic interests, by protecting the phrase "Here's Johnny" which is merely associated with him. In Zacchini, the Supreme Court stated that a mechanism to vindicate an individual's economic rights is indicated where the appropriated thing is "the product of ... [the individual's] own talents and energy, the end result of much time, effort and expense." Zacchini, supra, 433 U.S. at 575, 97 S.Ct. at 2857. There is nothing in the record to suggest that "Here's Johnny" has any nexus to Johnny Carson other than being the introduction to his personal appearances. The phrase is not part of an identity that he created. In its content "Here's Johnny" is a very simple and common introduction. The content of the phrase neither originated with Johnny Carson nor is it confined to the world of entertainment. The phrase is not said by Johnny Carson, but said of him. Its association with him is derived, in large part, by the context in which it is said--generally by Ed McMahon in a drawn out and distinctive voice[5] after the theme music to "The Tonight Show" is played, and immediately prior to Johnny Carson's own entrance. Appellee's use of the content "Here's Johnny," in light of its value as a double entendre, written on its product and corporate name, and therefore outside of the context in which it is associated with Johnny Carson, does little to rob Johnny Carson of something which is unique to him or a product of his own efforts.
 
 
 51
 The second policy goal of fostering the production of creative and intellectual works is not met by the majority's rule because in awarding publicity rights in a phrase neither created by him nor performed by him, economic reward and protection is divorced from personal incentive to produce on the part of the protected and benefited individual. Johnny Carson is simply reaping the rewards of the time, effort and work product of others.
 
 
 52
 Third, the majority's extension of the right of publicity to include the phrase "Here's Johnny" which is merely associated with Johnny Carson is not needed to provide alternatives to existing legal avenues for redressing wrongful conduct. The existence of a cause of action under section 43(a) of the Lanham Act, 15 U.S.C.A. Sec. 1125(a) (1976) and Michigan common law does much to undercut the need for policing against unfair competition through an additional legal remedy such as the right of publicity. The majority has concluded, and I concur, that the District Court was warranted in finding that there was not a reasonable likelihood that members of the public would be confused by appellee's use of the "Here's Johnny" trademark on a product as dissimilar to those licensed by Johnny Carson as portable toilets. In this case, this eliminates the argument of wrongdoing. Moreover, the majority's extension of the right of publicity to phrases and other things merely associated with an individual is not conditioned upon wrongdoing and would apply with equal force in the case of an unknowing user. With respect to unjust enrichment, because a celebrity such as Johnny Carson is himself enriched by phrases and other things associated with him in which he has made no personal investment of time, money or effort, another user of such a phrase or thing may be enriched somewhat by such use, but this enrichment is not at Johnny Carson's expense. The policies behind the right of publicity are not furthered by the majority's holding in this case.
 
 
 53
 II. Countervailing Interests and Considerations
 
 
 54
 The right of publicity, whether tied to name, likeness, achievements, identifying characteristics or actual performances, etc. conflicts with the economic and expressive interests of others. Society's interests in free enterprise and free expression must be balanced against the interests of an individual seeking protection in the right of publicity where the right is being expanded beyond established limits. In addition, the right to publicity may be subject to federal preemption where it conflicts with the provisions of the Copyright Act of 1976.
 
 A. Federal Policy: Monopolies
 
 55
 Protection under the right of publicity creates a common law monopoly that removes items, words and acts from the public domain. That federal policy favors free enterprise was recently reaffirmed by the Supreme Court in National Society of Professional Engineers v. United States, 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), in which the Supreme Court indicated that outside of the "rule of reason," only those anticompetitive restraints expressly authorized by Congress would be permitted to stand. Id. at 692 n. 18, 98 S.Ct. at 1365 n. 18. Concern for the impact of adopting an overbroad approach to the right of publicity was also indicated in this Court's decision in Memphis Development Foundation v. Factors Etc., Inc., 616 F.2d 956 (6th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). In Memphis Development, this Court held that the right of publicity does not survive a celebrity's death under Tennessee law. In so holding, this Court recognized that commercial and competitive interests are potentially compromised by an expansive approach to the right of publicity. This Court was concerned that an extension of the right of publicity to the exclusive control of the celebrity's heirs might compromise the efficiency, productivity and fairness of our economic system without enlarging the stock or quality of the goods, services, artistic creativity, information, invention or entertainment available and detract from the equal distribution of economic opportunity available in a free market system. Id. 959-60. Memphis Development recognized that the grant of a right of publicity is tantamount to the grant of a monopoly, in that case, for the life of the celebrity. The majority's grant to Johnny Carson of a publicity right in the phrase "Here's Johnny" takes this phrase away from the public domain, giving him a common law monopoly for it, without extracting from Johnny Carson a personal contribution for the public's benefit.
 
 
 56
 Protection under the right of publicity confers a monopoly on the protected individual that is potentially broader, offers fewer protections and potentially competes with federal statutory monopolies. As an essential part of three federal monopoly rights, copyright, trademark and patents, notice to the public is required in the form of filing with the appropriate governmental office and use of an appropriate mark. This apprises members of the public of the nature and extent of what is being removed from the public domain and subject to claims of infringement. The right of publicity provides limited notice to the public of the extent of the monopoly right to be asserted, if one is to be asserted at all. As the right of privacy is expanded beyond protections of name, likeness and actual performances, which provide relatively objective notice to the public of the extent of an individual's rights, to more subjective attributes such as achievements and identifying characteristics, the public's ability to be on notice of a common law monopoly right, if one is even asserted by a given famous individual, is severely diminished. Protecting phrases and other things merely associated with an individual provides virtually no notice to the public at all of what is claimed to be protected. By ensuring the invocation of the adjudicative process whenever the commercial use of a phrase or other associated thing is considered to have been wrongfully appropriated, the public is left to act at their peril. The result is a chilling effect on commercial innovation and opportunity.
 
 
 57
 Also unlike the federal statutory monopolies, this common law monopoly right offers no protections against the monopoly existing for an indefinite time or even in perpetuity. See Memphis Development, supra (right not inheritable under Tennessee law); Lugosi v. Universal Pictures, 25 Cal.3d 813, 603 P.2d 425, 160 Cal.Rptr. 323 (1979) (right not inheritable under California law). Contra, King v. American Heritage Products, Inc., 250 Ga. 135, 296 S.E.2d 697 (1982) (right inheritable under Georgia law); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir.1978), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979) (right inheritable); Groucho Marx Productions, Inc. v. Day & Night Co., Inc., 523 F.Supp. 485 (S.D.N.Y.1981) (right inheritable if commercially exploited during lifetime).
 
 
 58
 B. Federal Policy: Free Expression and Use of Intellectual Property
 
 
 59
 The first amendment protects the freedom of speech, including commercial speech. U.S. Const. amend. I; Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 rehr'g denied, 423 U.S. 886, 96 S.Ct. 162, 46 L.Ed.2d 118 (1975). Strong federal policy permits the free use of intellectual property, words and ideas that are in general circulation and not protected by a valid copyright, patent or trademark. Lear, Inc. v. Adkins, 395 U.S. 653, 668, 89 S.Ct. 1902, 1910, 23 L.Ed.2d 610 (1969); Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, rehr'g denied, 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964); Compco Corp. v. Day-Bright Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, rehr'g denied, 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed.2d 183 (1964). The federal copyright statute only protects original works that fix the author's particular expression of an idea or concept in a tangible form. State statutory or common law protection against activities violating rights that are not equivalent to those granted under copyright law or protection of subject matter which is not copyrightable, including works that are not fixed in any tangible form of expression, are not preempted. 17 U.S.C.A. Sec. 301(b) (1977). See generally, Shipley, Publicity Never Dies; It Just Fades Away: The right of Publicity and Federal Preemption, 66 Cornell L.Rev. 673 (1981). Apart from the technical arguments regarding preemption, if federal law and policy does not protect phrases such as "Here's Johnny," which is certainly not an original combination of words, state law should not protect them either under a right of publicity for want of a sufficient interest justifying protection. See U.S. Const., art. I, Sec. 8 (purpose of copyright and patent laws is to "promote the Progress of Science and the useful Acts"); Zacchini, supra, 433 U.S. at 575, 576-77, 97 S.Ct. at 2857, 2858 (purpose of right of publicity is to promote production of works that benefit the public that are product of individual's own talents and energy). In addition, because copyright does not restrain the use of a mere idea or concept but only protects particular tangible expressions of an idea or concept, it has been held not to run afoul of first amendment challenges. United States v. Bodin, 375 F.Supp. 1265, 1267 (W.D.Okl.1974); Walt Disney Productions v. Air Pirates, 345 F.Supp. 108, 115-16 (N.D.Cal.1972), citing, Nimmer, Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press?, 17 U.C.L.A. L.Rev. 1108 (1970). See Zacchini, supra, 433 U.S. at 577-78 n. 13, 97 S.Ct. at 2858-59 n. 13 (right of publicity could not prevent station from producing own human cannonball act). The protected tangible expressions are asserted to not run afoul of first amendment challenges because the notice requirements and limited duration of copyright protection balances the interest of individuals seeking protection under the copyright clause and the first amendment. See, e.g., Does Copyright Abridge the First Amendment Guarantees of Free Speech and Press?, supra, 1193. Because the phrase "Here's Johnny" is more akin to an idea or concept of introducing an individual than an original protectable fixed expression of that idea and because the right of publicity in this instance is not complemented by saving notice or duration requirements, phrases such as "Here's Johnny" should not be entitled to protection under the right of publicity as a matter of policy and concern for the first amendment.
 
 
 60
 Apart from the possibility of outright federal preemption, public policy requires that the public's interest in free enterprise and free expression take precedence over any interest Johnny Carson may have in a phrase associated with his person.
 
 III. Case Law
 
 61
 The common law right of publicity has been held to protect various aspects of an individual's identity from commercial exploitation:[6] name,[7] likeness,[8] achievements,[9] identifying characteristics,[10] actual performances,[11] and fictitious characters created by a performer.[12] Research reveals no case which has extended the right to publicity to phrases and other things which are merely associated with an individual.
 
 
 62
 The three cases cited by the majority in reaching their conclusion that the right of privacy should be extended to encompass phrases and other things merely associated with an individual and one other case merit further comment. Hirsch v. S.C. Johnson & Son, Inc., 90 Wis.2d 379, 280 N.W.2d 129 (1979), Ali v. Playgirl, Inc., 447 F.Supp. 723 (S.D.N.Y.1978), and Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821 (9th Cir.1974), are factually and legally distinguishable from the case on appeal. Hirsch simply stands for the principle accepted by the commentators, if not by the courts, that the right of publicity extends not only to an individual's name but to a nickname or stage name as well. Hirsch, supra, 280 N.W.2d at 137; Comment, The Tort of Misappropriation of Name or Likeness Under Wisconsin's New Privacy Law, 1978 Wis.L.Rev. 1029, 1046; Prosser, Privacy, 48 Cal.L.Rev. 383, 404 (1960). Hirsch required that the name clearly identify the wronged person. Hirsch, supra, 280 N.W.2d at 137. Hirsch goes on to state that if a fictitious name is used, context may be sufficient to link the fictitious name with the complaining individual, and therefore give rise to protection under a right of publicity. In the Hirsch case, context supplied the missing link which is not present here. Hirsch, a/k/a "Crazylegs," was a famous football player and all around athlete. He is described as the superstar of the era. Id. 280 N.W.2d at 131. He made a number of commercials and advertisements during his career and a movie was produced on his life. His unique running style, which was described by the Hirsch court as looking something like a whirling egg-beater, earned him his nickname. Id. 280 N.W.2d at 131. The defendant in Hirsch, S.C. Johnson & Son, marketed a moisturizing shaving gel for women under the name of "Crazylegs." The context linking this product to Hirsch was Johnson's first promotion of its product at a running event for women, the use of a cheer in a television commercial similar to the "Crazylegs" cheer initiated at a college where Hirsch became athletic director, and the fact that the product was for women's legs. Id. 280 N.W.2d at 138. Based on this evidence of "context," the Wisconsin appellate court found a question of fact for the jury as to whether "Crazylegs" identified Hirsch. In this case, not only is the majority not dealing with a nickname or a stage name, but there is not a scintilla of evidence to support the context requirement of Hirsch.[13] Appellee has only used the content of the "Here's Johnny" phrase on its product and its corporate name as transfigured by the double meaning of "John."
 
 
 63
 In Ali, Muhammad Ali sought protection under the right of publicity for the unauthorized use of his picture in Playgirl Magazine. Ali is a "likeness" case reinforced by the context in which the likeness occurs and further bolstered by a phrase, "the Greatest," commonly stated by Ali regarding himself. The essence of the case, and the unauthorized act from which Ali claims protection, is a drawing of a nude black man seated in the corner of a boxing ring with both hands taped and outstretched resting on the ropes on either side. The Ali court found that even a cursory inspection of the picture suggests that the facial characteristics of the man are those of Ali. The court stated: "The cheekbones, broad nose and wideset brown eyes, together with the distinctive smile and close cropped black hair are recognizable as the features of ... [Ali]." Ali supra, 726. Augmenting this likeness and reinforcing its identification with Ali was the context in which the likeness appeared--a boxing ring. The court found that identification of the individual depicted as Ali was further implied by the accompanying phrase "the Greatest." Id. 727. Based on these facts, the court had no difficulty concluding that the drawing was Ali's portrait or picture. See id. 726. To the extent the majority uses the phrase "the Greatest" to support is position that the right of publicity encompasses phrases or other things which are merely associated with an individual, they misstate the law of Ali. Once again, Ali is clearly a "likeness" case. To the extent the likeness was not a photographic one free from all ambiguity, identification with Muhammad Ali was reinforced by context and a phrase "the Greatest" stated by Ali about himself. The result in that case is so dependent on the identifying features in the drawing and the boxing context in which the man is portrayed that the phrase "the Greatest" may not be severed from this whole and the legal propositions developed by the Ali court in response to the whole applied to the phrase alone. To be analogous, a likeness of Johnny Carson would be required in addition to the words "Here's Johnny" suggesting the context of "The Tonight Show" or the Ali court would have to have enjoined all others from using the phrase "the Greatest." In short, Ali does not support the majority's holding.
 
 
 64
 Motschenbacher, the third case cited by the majority, is an "identifying characteristics" case. Motschenbacher, a professional driver of racing cars who is internationally known, sought protection in the right of publicity for the unauthorized use of a photograph of his racing car, slightly altered, in a televised cigarette commercial. Although he was in fact driving the car at the time it was photographed, his facial features are not visible in the commercial. Motschenbacher, supra, 822. The Ninth Circuit found as a matter of California law, that the right of publicity extended to protect the unauthorized use of photographs of Motschenbacher's racing car as one of his identifying characteristics. Identifying characteristics, such as Motschenbacher's racing car, are not synonymous with phrases or other things which are merely associated with an individual. In Motschenbacher, the Ninth Circuit determined that the car driver had "consistently 'individualized' his cars to set them apart from those of other drivers and to make them more readily identifiable as his own." Id. Since 1966, each car had a distinctive narrow white pinstripe appearing on no other car. This decoration has always been in the same place on the car bodies, which have uniformly been red. In addition, his racing number "11" has always been against an oval background in contrast to the circular white background used by other drivers. Id. In the commercial, the photo of Motschenbacher's car was altered so that the number "11" was changed to "71," a spoiler with the name "Winston" was added, and other advertisements removed. The remainder of the individualized decorations remained the same. Id. Despite these alterations, the Ninth Circuit determined that car possessed identifying characteristics peculiar to Motschenbacher. Id. 827. This case is factually and legally distinguishable from the case on appeal. Motschenbacher's racing car was not merely associated with him but was the vehicle, literally and figuratively, by which he achieved his fame. The identifying characteristics, in the form of several decorations peculiar to his car, were the product of his personal time, energy, effort and expense and as such are inextricably interwoven with him as his individual work product, rather than being merely associated with him. Furthermore, the number and combination of the peculiar decorations on his cars results in a set of identifying characteristics, which although inanimate, are unique enough to resist duplication other than by intentional copying. This uniqueness provides notice to the public of what is claimed as part of his publicity right, as does an individual's name, likeness or actual performance, and narrowly limits the scope of his monopoly. In contrast to Motschenbacher, Johnny Carson's fame as a comedian and talk show host is severable from the phrase with which he is associated, "Here's Johnny." This phrase is not Johnny Carson's "thumbprint"; it is not his work product; it is not original; it is a common, simple combination of a direct object, a contracted verb and a common first name; divorced from context, it is two dimensional and ambiguous. It can hardly be said to be a symbol or synthesis, i.e., a tangible "expression" of the "idea," of Johnny Carson the comedian and talk show host, as Motschenbacher's racing car was the tangible expression of the man.
 
 
 65
 Finally, Lombardo v. Doyle, Dane & Bernbach, Inc., 58 A.D.2d 620, 396 N.Y.S.2d 661 (App.Div.1977), which although not cited by the majority is discussed by a number of the commentators with the cases cited by the majority, does not go so far as to extend the right of publicity to phrases or things which are merely associated with an individual. In Lombardo, an advertising agency and foreign automobile manufacturer entered into negotiations with the band leader, Guy Lombardo, for the purpose of producing a television commercial designed to depict Lombardo and his orchestra in New Year's Eve party hats, playing "Auld Lang Syne" while models of cars rotated in the foreground. Lombardo, supra, 396 N.Y.S.2d at 665 (Hopkins, J., concurring). After negotiations between the parties fell through, the agency and manufacturer proceeded with the commercial. An actor was employed to lead a band playing "Auld Lang Syne" in the same musical beat as developed by Lombardo, using the same gestures as Lombardo employed in conducting his band. Lombardo then instituted suit claiming that the agency and manufacturer had used a "likeness and representation" of himself without his consent, violating his statutory right to privacy under New York law and his common law right to be free from the misappropriation of his cultivated public persona as "Mr. New Year's Eve." Id. 396 N.Y.S.2d at 664. The Lombardo court found no statutory violation but did find a cause of action to be stated under Lombardo's common law theory. Lombardo appears to be in part a "likeness" case based on impersonation reinforced by context, and in part an "identifying characteristics" case like Motschenbacher. The "likeness" aspect comes from the actor portraying a bandleader, Lombardo's profession and vehicle for his fame, while using the same gestures employed by Lombardo and a musical beat linked to him. As in Ali, likeness is reinforced by context--the trappings of New Year's Eve, balloons, party hats and the band playing "Auld Lang Syne." Like Motschenbacher, Lombardo's gestures while conducting are part of his "thumbprint" and his musical beat and rendition of "Auld Lang Syne" on New Year's Eve are probably inseverable from his fame. Lombardo, however, is a less compelling case for finding a right of privacy than Motschenbacher and his similarities to the case on appeal. Unlike the several individualized decorations on Motschenbacher's car, only the conducting gestures and musical beat are unique to Lombardo. The very elements that he urged tied him to his persona as "Mr. New Year's Eve" are not peculiar to him but are shared with numerous bandleaders on New Year's Eve--balloons, party hats and "Auld Lang Syne." The commonness of these crucial alleged "identifying characteristics" undercuts the value of their combination by Lombardo. In Motschenbacher, the combination of several individualized decorations peculiar to Motschenbacher resulted in relatively clear notice to the public of what the extent of Motschenbacher's monopoly right was and resulted in this monopoly right being very narrow; it protected only the unauthorized use of photographs or depictions of a particular set of identical cars. In contrast, in Lombardo, the net result of the court's opinion would seem to be that Lombardo has a monopoly right enforceable against anyone who wishes to duplicate a bandleader playing "Auld Lang Syne" amid the trappings of a New Year's Eve party. Limitations on the Right of Publicity, supra, 123. The Lombardo court did not explore the anti-competitive or free expression ramifications of its decision. Id. As with the holiday New Year's Eve, the song "Auld Lang Syne" and party trappings such as balloons and party hats in Lombardo, the phrase "Here's Johnny" is very common and hardly peculiar to a particular individual. Unlike the combination of common and unique (gestures and musical beat) elements in Lombardo, the phrase "Here's Johnny" as used here does not exist in combination with other elements, with the exception of the pun, the "Great Commodium," an indirect reference to Johnny Carson, to narrow the monopoly right proposed or apprise the public of what is claimed. Unlike the situation in Motschenbacher and Lombardo, the phrase contains nothing personal to Carson in the sense of being caused by him or a product of his time, effort and energies. Therefore, while questioning the merits of extending the right or privacy as far as the court did in Lombardo, primarily for the court's lack of policy analysis concerning anticompetitive consequences and first amendment problems, I believe that Lombardo is distinguishable.
 
 
 66
 Accordingly, neither policy nor case law supports the extension of the right of publicity to encompass phrases and other things merely associated with an individual as in this case. I would affirm the judgment of the District Court on this basis as well.
 
 
 
 *
 Circuit Judge Brown retired from regular active service under the provisions of 28 U.S.C. Sec. 371(b) on June 16, 1982, and became a Senior Circuit Judge
 
 
 **
 The Honorable Luther M. Swygert, Senior Circuit Judge for the Seventh Circuit Court of Appeals, Chicago, Illinois, sitting by designation
 
 
 [1]
 Michigan law, which governs these claims, has not yet clearly addressed the right of publicity. But the general recognition of the right, see W. Prosser, HANDBOOK OF THE LAW OF TORTS Sec. 117, at 805 (4th ed. 1971), suggests to us that the Michigan courts would adopt the right. Michigan has recognized a right of privacy. Beaumont v. Brown, 401 Mich. 80, 257 N.W.2d 522 (1977)
 
 
 [2]
 See also Prosser, HANDBOOK OF THE LAW OF TORTS, supra, at 805 ("It is the plaintiff's name as a symbol of his identity that is involved here, and not as a mere name.")
 
 
 [3]
 Although Michigan law is applicable and the author of the dissent is an experienced and able Michigan lawyer and judge, we do not understand the dissent to contend that the law of that state in particular proscribes the holding of the majority opinion
 
 
 [4]
 Appellee did not brief and make the policy and constitutional arguments relied upon in the dissent. Instead, the appellee confined its argument to the straightforward proposition that the right of publicity is limited to appropriation of the celebrity's "name or likeness."
 
 
 [1]
 It cannot be claimed that Johnny Carson's appearances on "The Tonight Show" are the only times at which a performer is introduced with the phrase "Here's ____________." Numerous other performers are introduced with the phrase "Here's ____________," using their first name, last name or full name
 
 
 [2]
 See note 5, infra
 
 
 [3]
 Random House College Dictionary 397 (Rev'd ed. 1980)
 
 
 [4]
 Id. 721
 
 
 [5]
 Ed McMahon arguably has a competing publicity interest in this same phrase because it is said by him in a distinctive and drawn out manner as his introduction to entertainers who appear on "The Tonight Show," including Johnny Carson
 
 
 [6]
 The concept that an individual should have the right to protect and profit from the commercial use of his name, likeness, achievements, identifying characteristics and actual performances took many forms as modern advertising and merchandising techniques developed and the name, etc. of celebrities assumed greater value. Shipley, Publicity Never Dies; It Just Fades Away: The Right of Publicity and Federal Preemption, 66 Cornell L.Rev. 673, 678 (1981). The right of publicity as a distinct right is of relatively recent origin. This right was first recognized in the Second Circuit case of Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2d Cir.), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953). Only in 1953 did this right emerge from the right to privacy, the tort of misappropriation, the unfair competition doctrine and other theories in contract and defamation, as a distinct and separate theory. The scope and definition of new common law rights is often hazy in the development process. Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481, 490 (3d Cir.) cert. denied, 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956). Although some of the cases cited in footnotes 4-9, infra, discuss these other theories, it is evident from a reading of the cases that virtually all of the courts were concerned with protection of an individual's right to control and profit from the commercial use of his name, likeness, etc. and were attempting to come to grips with this new interest. For these reasons, several cases which do not specifically refer to the right of publicity are cited for propositions to which the right of publicity would now no doubt be applied
 
 
 [7]
 See e.g., Cepeda v. Swift & Co., 415 F.2d 1205 (8th Cir.1969) (real name); Gardella v. Log Cabin Products Co., 89 F.2d 891 (2d Cir.1937) (stage name); Hirsch v. S.C. Johnson & Son, Inc., 90 Wis.2d 379, 280 N.W.2d 129 (1979) (nickname); Guglielmi v. Spelling-Goldberg Productions, 25 Cal.3d 860, 603 P.2d 454, 160 Cal.Rptr. 352 (1979) (stage-real name)
 
 
 [8]
 Ali v. Playgirl, Inc., 447 F.Supp. 723 (S.D.N.Y.1978) (likeness). See, e.g., Grant v. Esquire, Inc., 367 F.Supp. 876 (S.D.N.Y.1973) (likeness); McQueen v. Wilson, 117 Ga.App. 488, 161 S.E.2d 63 (Ct.App.), rev'd on other grounds, 224 Ga. 420, 162 S.E.2d 313 (1968) (likeness); Brinkley v. Casablancas, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (1st Dept.1981); see Guglielmi v. Spelling-Goldberg Productions, 25 Cal.3d 860, 603 P.2d 454, 160 Cal.Rptr. 352 (1979) (likeness-impersonation); Memphis Development v. Factors Etc., Inc., 616 F.2d 956 (6th Cir.), cert. denied, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); King v. American Heritage Products, Inc., 250 Ga. 135, 296 S.E.2d 697 (1982)
 
 
 [9]
 See, e.g., Palmer v. Schonhorn, 96 N.J.Super. 72, 232 A.2d 458 (Super.Ct.1967) (individual's achievements); Guglielmi v. Spelling-Goldberg Productions, 25 Cal.3d 860, 603 P.2d 454, 160 Cal.Rptr. 352 (1979) (no right to individual's life story); Rosemont Enterprises, Inc. v. Random House, Inc., 58 Misc.2d 1, 294 N.Y.S.2d 122 (Sup.Ct.1968), aff'd. mem., 32 A.D.2d 892, 301 N.Y.S.2d 948 (App.Div.1969) (no right to individual's life story); Donahue v. Warner Bros. Pictures Distributing Corp., 2 Utah 2d 256, 272 P.2d 177 (1954) (no right to individual's life story)
 
 
 [10]
 Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821 (9th Cir.1974) (identifying characteristics/distinctive racing car); Lombardo v. Doyle, Dane & Bernbach, Inc., 58 A.D.2d 620, 396 N.Y.S.2d 661 (App.Div.1977) (identifying characteristics/band leader's gestures setting, nickname-Mr. New Year's Eve)
 
 
 [11]
 Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (actual performance); Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481 (3d Cir.), cert. denied, 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956) (actual performance)
 
 
 [12]
 Groucho Marx Productions, Inc. v. Day & Night Co., 523 F.Supp. 485 (S.D.N.Y.1981); Price v. Hal Roach Studios, Inc., 400 F.Supp. 836 (S.D.N.Y.1975) (Laurel & Hardy characters). See Lugosi v. Universal Pictures, 25 Cal.3d 813, 603 P.2d 425, 160 Cal.Rptr. 323 (1979) (Dracula)
 
 
 [13]
 In fact, I concur with that portion of the majority's opinion in which we find no reasonable likelihood of confusion between Johnny Carson's licensed products and appellee's portable toilets